**Thomas O. BIBBS, Jr., Appellant,**

**v.**

**John BLOCK, Secretary, United States Department of Agriculture, Appellee.**

**No. 83–1942.**

United States Court of Appeals, Eighth Circuit.

Submitted April 29, 1985.

Decided Dec. 11, 1985.

Karon D. Ramsey, Kansas City, Mo., for appellant.

Carolyn Kuhl, Washington, D.C., for appellee.

Before LAY, Chief Judge, and HEANEY, BRIGHT [*], ROSS, McMILLIAN, ARNOLD, JOHN R. GIBSON, FAGG, and BOWMAN, Circuit Judges, en banc.

ARNOLD, Circuit Judge.

This is a Title VII case in which the plaintiff, an employee of the United States Department of Agriculture, claims that he was denied a promotion because of his race.[1] The District Court [2] found "that racial considerations probably did play a minor role in the selection process, ... but that plaintiff would not have been selected for the position even if his race had been disregarded." *Bibbs v. Block,* No. 81-0227-CV-W-6, slip op. 7 (W.D.Mo. June 14, 1983). It added that "race was not a determining factor in the decision to promote [another employee] rather than plaintiff." *Id.* at 10. Judgment was entered in favor of defendant.

On appeal, a panel of this Court reversed. *Bibbs v. Block,* 749 F.2d 508 (8th Cir.1984). Pointing to the District Court's finding that "race was a discernible factor at the time of the decision," *Bibbs v. Block, supra,* slip op. 10, the panel took the view that the additional finding that "the same decision would have been made absent racial considerations" was "inherently inconsistent." 749 F.2d at 512. It vacated the judgment for defendant and remanded to the District Court "to enter a judgment in favor of plaintiff and to consider the necessary remedy to make plaintiff whole." *Id.* at 513.

The defendant petitioned for rehearing. He asked that the panel modify its opinion to make clear that any relief ordered on remand could not include retroactive promotion and back pay at the higher level plaintiff had unsuccessfully sought. Such relief, defendant argued, could not be appropriate where the trier of fact had found that plaintiff would not have been promoted in any event. In the alternative, defendant asked for rehearing en banc. We granted the petition for rehearing en banc, thus automatically vacating the panel opinion. After oral argument, we now hold that plaintiff, having shown that race was a discernible factor at the time of the decision not to promote him, has established a violation of Title VII. The cause will be remanded for a determination of appropriate relief. As to retroactive promotion and back pay, the District Court should make a new finding, this time placing the burden of persuasion on defendant. If the court finds that defendant has shown by a preponderance of the evidence that plaintiff would not have been promoted in any event, retroactive promotion and back pay may not be ordered.

I.

Bibbs, who is black, is employed by the Agricultural Stabilization and Conservation Service (ASCS), a division of the Department of Agriculture. In September 1976, Bibbs applied for, but was denied, a promotion to a supervisory position in the ASCS print shop. Bibbs was one of seven individuals who applied for the position; he was the only black applicant. All seven applications were forwarded to a selection committee comprised of three individuals, all of whom were white. The committee was dominated by one member, Joseph Tresnak, who was most familiar with the print shop and the print-shop employees. The District Court found that Tresnak was the "key figure" in making the selection.

[*] Judge Bright became a Senior Circuit Judge on June 1, 1985.

1. Plaintiff initially claimed age discrimination as well. The District Court found against this claim, and the panel to which this appeal was initially submitted affirmed that finding as not clearly erroneous. *Bibbs v. Block,* 749 F.2d 508, 509 (8th Cir.1984). This aspect of the case is not before the Court en banc.

2. The Hon. Howard F. Sachs, United States District Judge for the Western District of Missouri.

Tresnak's central role in the selection process is significant in light of the direct evidence of Tresnak's use of racial slurs. One witness testified Tresnak had characterized Bibbs as a "black militant," while another testified Tresnak referred to another print-shop employee who was black as "boy" and "nigger." After interviewing each of the seven candidates, the committee selected Dennis Laube, who was white, for the position. The three members of the committee, after conclusion of all the interviews and without having agreed on any criteria for selection, selected the same top three candidates and each chose them in the same order. They did not discuss their views of the relative merits of the candidates before, during, or after the interviews.

In determining that the decision not to promote Bibbs was not racially motivated, the trial court noted that the work force in the print shop was racially integrated.[3] The trial court also found that Bibbs had a history of disciplinary and interpersonal problems and was not selected in part because he was difficult to work with and caused irritation among fellow workers. Given the diverse factors each of the members of the selection committee used, and the alleged absence of any discussion among them during the deliberation process, the trial court judged the selection committee members "not particularly credible, either in demeanor or in the substance of their testimony. * * * The committee members were extremely guarded in their responses to questions and were quite defensive in their positions on matters that might reflect negatively on their decision. The Court is skeptical that it has heard the complete story concerning the committee's deliberations." Slip op. 5. The trial court was particularly concerned about the committee members' lack of credibility given the subjective criteria considered by the committee. The trial court observed that a subjective procedure may provide a "conve-nient screen for discriminatory decision making, and must be carefully scrutinized." Id. at 4.

After considering the evidence, the District Court made two factual findings. First, the court determined that race was a factor in the "selection process." Id. at 7. The court initially stated race played a "minor role in the selection process," ibid.; later, it stated race was a "discernible factor at the time of the decision." Id. at 10. Second, the court found that Bibbs "would not have been selected for the position even if his race had been disregarded," id. at 7. Thus, the court concluded race was not a "determining" factor or a "but for" factor, meaning a factor that ultimately made a difference in the decision, and that liability was therefore not established. It dismissed the complaint.

## II.

In many Title VII cases, the proof proceeds on both sides on the premise that one motive only on the part of the employer—either an illegitimate one (e.g., race) or a legitimate one (e.g., ability to do the job)—has caused the adverse action of which the plaintiff complains. It is this type of case for which the familiar evidentiary framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), is designed. After the plaintiff establishes a prima facie case, and the defendant "articulates" (a verb that refers only to the burden of producing evidence) a legitimate, nondiscriminatory reason for the action complained of, the burden then shifts back to the plaintiff to persuade the trier of fact that the defendant's proffered reason was not the real one, but only a pretext hiding an impermissible racial motivation. Typically, the plaintiff will contend that one reason—race—was operative, the defendant will contend that another single reason—ability to do the job—motivated it, and the trier of

---

**3.** Such "bottom line" statistics do not insulate an employer from liability for intentional discrimination against an individual employee. See Connecticut v. Teal, 457 U.S. 440, 454, 102 S.Ct. 2525, 2534, 73 L.Ed.2d 130 (1982). But they are relevant evidence, to be considered along with all other factors.

fact will find one reason or the other (but not a combination) to be the true one. In such a case, the issues of motivation and causation are not distinctly separated, nor do they need to be. If the plaintiff shows the defendant's proffered reason to be a pretext for race, the case is over. Liability is established, and reinstatement is ordered (in a discharge case) absent extraordinary circumstances. The very showing that the defendant's asserted reason was a pretext for race is also a demonstration that but for his race plaintiff would have gotten the job. That is what pretext means: a reason *for the employment decision* that is not the true reason.

If the District Court in the case before us had found that defendant's reason or reasons for not promoting plaintiff were other than race, and that race played no part in the decisionmaking process, we should be required simply to affirm the dismissal of the complaint—assuming the finding was not clearly erroneous. But the court here conducted a more sensitive analysis of the various factors at work. It found that race was "a discernible factor," although not a but-for factor. It found, in other words, mixed motives.[4] In this situation, we believe analysis is aided best by separating the issues of liability and remedy. The District Court itself, citing Brodin, *The Standard of Causation in the Mixed-Motive Title VII Action: A Social Policy Perspective*, 82 Colum.L.Rev. 292 (1982), suggested such an approach, but decided, in view of its "novelty," to leave to us whether to pursue it. Slip op. 10 n. 5.

We accept the invitation. In doing so, we use as a factual predicate the District Court's findings of fact, which are not clearly erroneous. We look first to the statute. Section 703(a), 42 U.S.C. § 2000e–2(a) (1982), describes what conduct is unlawful:

> Employer practices
>
> It shall be an unlawful employment practice for an employer—
>
> (1) to fail or refuse to hire or to discharge any individual, *or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race,* color, religion, sex, or national origin; or
>
> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive *or tend to deprive* any individual of employment opportunities *or otherwise adversely affect his status as an employee, because of such individual's race,* color, religion, sex, or national origin.

(Emphasis added.)

As always, the words of the Congress are the best indications of its intention. It is not only failing to hire someone, or discharging him or her, because of race or sex, that is unlawful. The statute also forbids employers "otherwise to discriminate ... with respect to compensation, terms, conditions, or privileges of employment, because of ... race," § 703(a)(1), and makes it unlawful for employers "to limit ... or classify ... employees ... in any way which would deprive *or tend to deprive* any individual of employment *opportunities or otherwise adversely affect*" him or her because of race. Section 703(a)(2). To put it in terms of the present case, it would be unlawful for defendant to put Bibbs at a disadvantage in the competition for promotion because of his race, as well as actually to deny him the promotion for this reason. (Indeed, if an employer requires black employees to meet a higher

---

4. The District Court found that racial considerations were a discernible, though minor, factor in the selection process and in the decision of whom to promote, though not a determining factor in the "but for" sense. The court found that race was a motivating factor but that plaintiff had not shown that he would have received the job had race not been considered. In this situation, we think liability on the part of the defendant is established. The plaintiff, however, will actually be awarded the promotion (or comparable relief such as front pay or damages) only if defendant fails to show that it would have made the same decision absent consideration of the impermissible factor.

standard, the statute is violated even if they actually meet it and get the jobs in question.) Every kind of disadvantage resulting from racial prejudice in the employment setting is outlawed. Forcing Bibbs to be considered for promotion in a process in which race plays a discernible part is itself a violation of law, regardless of the outcome of the process. At the very least, such a process "tend[s] to deprive" him of an "employment opportunit[y]." Section 703(a)(2).

It does not follow, though, that retroactive promotion is an appropriate remedy. Unless the impermissible racial motivation was a but-for cause of Bibbs's losing the promotion, to place him in the job now would award him a windfall. He would be more than made whole. He would get a job that he would never have received whatever his race. At this point, we think, another provision of the statute, Section 706(g), 42 U.S.C. § 2000e–5(g) (1982), becomes important:

> (g) If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees with or without back pay * * *, or any other equitable relief as the court deems appropriate. * * * No order of the court shall require the admission or reinstatement of an individual as a member of a union, or the hiring, reinstatement, or promotion of an individual as an employee, or the payment to him of any back pay, if such individual was refused admission, suspended, or expelled, or was refused employment or advancement, or was suspended or discharged *for any reason other than discrimination on account of race*, color, religion, sex, or national origin or in violation of section 2000e–3(a) of this title.

(Emphasis added.)

Thus, the language of Title VII supports the separation of liability and remedy and allows an award of reinstatement or promotion and back pay only after a finding that discrimination was the but-for cause of the employment decision. After defining unlawful employment practices of an employer in Subsection 703(a) of the statute, Congress set forth the conditions on which courts may grant injunctive and affirmative relief. By the terms of the statute, injunctive relief may be awarded after a finding of intentional discrimination; and affirmative relief such as reinstatement and back pay may not be awarded if the employment decision was "for any reason other than discrimination." The "but-for" determination required for an award of affirmative relief is consistent with Title VII's intended purpose of making persons whole for injuries suffered on account of unlawful employment discrimination. *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418, 95 S.Ct. 2362, 2372, 45 L.Ed.2d 280 (1975). Focusing on Subsection 706(g) of the statute, the Supreme Court recently reaffirmed the principle of make-whole relief, stating that competitive seniority can be awarded only to actual victims of discrimination. *Firefighters Local Union No. 1784 v. Stotts*, 467 U.S. 561, 104 S.Ct. 2576, 2589, 81 L.Ed.2d 483 (1984).

The Supreme Court has not expressly addressed the mixed-motives problem in a Title VII case, but it has focused on it in other contexts. For example, in the context of legislative and administrative decision making, the Court has considered whether a decision motivated by both lawful and unlawful considerations violated the Equal Protection Clause. See *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 265–66, 97 S.Ct. 555, 563–64, 50 L.Ed.2d 450 (1977) ("When there is proof that a discriminatory purpose has been a *motivating* factor in the decision, * * * judicial deference [to the legislative/administrative decision] is no longer justified.") (emphasis added). The Court established the so-called same-decision test to review such decisions:

> Proof that the decision by the Village was motivated in part by a racially dis-

criminatory purpose would not necessarily have required invalidation of the challenged decision. Such proof would, however, have shifted to the Village the burden of establishing that the same decision would have resulted even had the impermissible purpose not been considered. If this were established, the complaining party in a case of this kind no longer fairly could attribute the injury complained of to improper consideration of a discriminatory purpose. In such circumstances, there would be no justification for judicial interference with the challenged decision.

*Id.* at 270 n. 21, 97 S.Ct. at 566 n. 21. The Court also adopted the same-decision test for First Amendment retaliatory-discharge cases in *Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), decided the same day as *Arlington Heights.* See also *Givhan v. Western Line Consolidated School District,* 439 U.S. 410, 416–17, 99 S.Ct. 693, 697, 58 L.Ed.2d 619 (1979). The Court in *Mt. Healthy* articulated the proper standard of causation as follows:

> Initially, in this case, the burden was properly placed upon respondent to show that his conduct was constitutionally protected, and that this conduct was a "substantial factor"—or, to put it in other words, that it was a "motivating factor" in the Board's decision not to rehire him. Respondent having carried that burden, however, the District Court should have gone on to determine whether the Board had shown by a preponderance of the evidence that it would have reached the same decision as to respondent's reemployment even in the absence of the protected conduct.

429 U.S. at 287, 97 S.Ct. 568 at 576 (footnote omitted). See also *NLRB v. Transportation Management Corp.,* 462 U.S. 393, 103 S.Ct. 2469, 76 L.Ed.2d 667 (1983) (similar mixed-motives analysis used in unfair-labor-practice cases).

■ In the *Mt. Healthy* group of cases, of course, the Supreme Court's mixed-motives analysis is used to establish the defendant's liability in the first place, not simply to determine the appropriate remedy. If the defendant establishes that it would have made the same decision in the absence of the illegitimate factor, it wins the case, and the complaint is dismissed. Our reading of Title VII is significantly different. In that statute, Congress has made unlawful any kind of racial discrimination, not just discrimination that actually deprives someone of a job. A defendant's showing that the plaintiff would not have gotten the job anyway does not extinguish liability. It simply excludes the remedy of retroactive promotion or reinstatement. In adopting this mode of analysis, we employ an approach similar to that used in *King v. Trans-World Airlines, Inc.,* 738 F.2d 255, 259 (8th Cir.1984) (discrimination in interview process not cured by defendant's legitimate reasons for not hiring plaintiff), approved in *Easley v. Anheuser-Busch, Inc.,* 758 F.2d 251, 262 (8th Cir.1985). See also, *e.g., Caviale v. Wisconsin Department of Health and Social Services,* 744 F.2d 1289, 1295–96 (7th Cir.1984); *Fadhl v. San Francisco,* 741 F.2d 1163, 1166–67 (9th Cir.1984); *Pollard v. Grinstead,* 741 F.2d 73, 75 (4th Cir.1984); *Smallwood v. United Air Lines, Inc.,* 728 F.2d 614, 620 (4th Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 120, 83 L.Ed.2d 62 (1984); *Toney v. Block,* 705 F.2d 1364, 1370 (D.C.Cir.1983) (Tamm, J., concurring); *Milton v. Weinberger,* 696 F.2d 94, 98–99 (D.C.Cir.1982); *Harbison v. Goldschmidt,* 693 F.2d 115, 116–17 (10th Cir.1982); *Nanty v. Barrows Co.,* 660 F.2d 1327, 1333 (9th Cir.1981); *League of United Latin American Citizens v. City of Salinas Fire Department,* 654 F.2d 557, 558 (9th Cir.1981); *Richerson v. Jones,* 551 F.2d 918, 923–25 (3d Cir.1977); *Day v. Mathews,* 530 F.2d 1083, 1085 (D.C.Cir. 1976) (per curiam); see generally Brodin, *The Standard of Causation in the Mixed-Motive Title VII Action: A Social-Policy Perspective,* 82 Colum.L.Rev. 292 (1982). Under this approach, once the plaintiff has established a violation of Title VII by proving that an unlawful motive played some part in the employment decision or deci-

sional process, the plaintiff is entitled to some relief, including, as appropriate, a declaratory judgment, partial attorney's fees, and injunctive relief against future or continued discrimination. However, even after a finding of unlawful discrimination is made, the defendant is allowed a further defense in order to limit the relief. The defendant may avoid an award of reinstatement or promotion and back pay if it can prove by a preponderance of the evidence [5] that the plaintiff would not have been hired or promoted even in the absence of the proven discrimination.

This same-decision test will apply only to determine the appropriate remedy and only after plaintiff proves he or she was a victim of unlawful discrimination in some respect. *Toney,* 705 F.2d at 1370 (Tamm, J., concurring) (footnote omitted) ("It has no relevance to the liability phase of a Title VII suit."). For that reason, the burden of production *and* persuasion shifts from the plaintiff to the defendant. *King,* 738 F.2d at 259 ("The burden of showing that proven discrimination did not cause a plaintiff's rejection is properly placed on the defendant-employer because its unlawful acts have made it difficult to determine what would have transpired if all parties had acted properly.") (quoting *League of United Latin American Citizens v. City of Salinas Fire Department,* 654 F.2d 557, 559 (9th Cir.1981)).

In the instant case, Bibbs has proved race was a discernible factor in the decision not to promote him. We hold such proof is sufficient in a mixed-motive context to establish intentional discrimination and liability under Title VII. We therefore vacate the judgment dismissing the complaint and remand for the entry of a declaratory judgment in favor of Bibbs and an injunction prohibiting the ASCS from future or continued discrimination against Bibbs on the basis of race. In addition, the District Court should consider Bibbs a prevailing party for the purpose of an award of attorney's fees. See 42 U.S.C. § 2000e–5(k); *King,* 738 F.2d at 259; *Nanty v. Barrows Co.* 660 F.2d 1327, 1334 n. 10 (9th Cir.1981). Of course, in determining a reasonable fee, an adjustment based on the extent to which Bibbs has succeeded will be appropriate. See *Hensley v. Eckerhart,* 461 U.S. 424, 435–36, 103 S.Ct. 1933, 1940–41, 76 L.Ed.2d 40 (1983) (applying 42 U.S.C. § 1988). Nevertheless, we emphasize that "by proving unlawful discrimination, appellant prevailed on a significant issue in the litigation," *King,* 738 F.2d at 259, and thereby vindicated a major purpose of Title VII, the rooting out and deterrence of job discrimination.

## III.

On this rehearing en banc the government did not challenge the panel's holding that defendant is liable. Instead, it challenged the scope of relief available when there has been no finding that discrimination was the "but-for" cause of the denial of promotion. Because we agree that a but-for or same-decision finding must be made before affirmative relief such as retroactive promotion and back pay may be awarded, we remand the case for further analysis of the remedy issue. As stated above, the District Court must consider whether Bibbs would have received the pro-

**5.** Although several courts considering the weight of the employer's burden on the remedy question have imposed a "clear and convincing" proof requirement, see, *e.g., Toney,* 705 F.2d at 1373 (Tamm, J., concurring); *Patterson v. Greenwood School District 50,* 696 F.2d 293, 295; *Ostroff v. Employment Exchange, Inc.,* 683 F.2d 302, 304 (9th Cir.1982), we recently rejected that higher standard of proof in *Craik v. Minnesota State University Board,* 731 F.2d 465, 470 n. 8 (8th Cir.1984) (Title VII class action alleging a pattern or practice of sex discrimination). *But cf. King,* 738 F.2d 255, 257 (8th Cir.1984). In

*Craik* we stated: "The normal standard of proof in civil litigation is that of a preponderance of the evidence, and we do not believe that the public and private interests involved require altering that distribution of the risk of error between the litigants." 731 F.2d at 470 n. 8. We adhere to that view now. *Cf. Herman & McLean v. Huddleston,* 459 U.S. 375, 389–90, 103 S.Ct. 683, 685, 74 L.Ed.2d 548 (recovery under § 10(b) of the 1934 Securities Exchange Act, 15 U.S.C. § 78j(b), requires preponderance rather than clear and convincing evidence).

motion but for the discrimination in the selection process. While the trial court's statement that "[i]t cannot be concluded that plaintiff would have been selected by a committee free of racial considerations" would satisfy the same-decision standard, the trial court apparently placed the burden on Bibbs to show why he was denied the promotion. We reiterate that to avoid an award of retroactive promotion and back pay, the defendant must prove by a preponderance of evidence that Bibbs would not have received the promotion even if race had not been considered.

Vacated and remanded with instructions.

LAY, Chief Judge, with whom HEANEY and McMILLIAN, Circuit Judges, join, concurring.

I concur in Judge Arnold's well-written opinion.

I write separately for two reasons: (1) to voice my disagreement with the dissent and (2) to state specially, although I fully join Judge Arnold's opinion, that I seriously question the propriety of applying the "same decision" test to "mixed motive" cases in a Title VII context.[1]

In its petition for a rehearing en banc, the government *did not* dispute the finding of liability in the panel opinion and moved only to have this court adopt the "same decision" test for determining a remedy on remand. The liability issue was not argued by the respective parties nor was it considered by the court en banc. The dissent now, without discussion of the factual testimony, finds no liability at all and affirms the district court outright.

The original panel opinion, *Bibbs v. Block*, 749 F.2d 508 (8th Cir.1984) (Lay, C.J., and Fairchild & McMillian, JJ.) reviewed the factual findings of the district court and held that the district court's finding that race was not a "determining factor" in the employment decision was clearly erroneous and not supported by the record. The record reveals that Tresnak, who was shown to be racially biased, was the key figure in the promotion decision. The district court found that the selection committee lacked credibility in their testimony regarding the process of selection and that the selection process was suspect due to its subjective nature.

The dissent misreads Judge Arnold's opinion as establishing a new test, that of "discernible factor." The district court simply used the word "discernible" as an adjective to describe a racial factor which the court was able to "make out, * * * detect, * * * recognize, or identify as separate and distinct."[2] The majority opinion does not substitute the phrase "discernible factor" as a test to replace causation. Judge Arnold's analysis of the record, *ante* at 1323–1324, finds that:

> [O]nce the plaintiff has established a violation of Title VII by proving that an unlawful motive played some part in the employment decision or decisional process, the plaintiff is entitled to some relief, including, as appropriate, a declaratory judgment, partial attorney's fees, and injunctive relief against future or continued discrimination. However, even after a finding of unlawful discrimination is made, the defendant is allowed a further defense in order to limit the relief. The defendant may avoid an award of reinstatement or promotion and back pay if it can prove by a preponderance of the evidence that the plaintiff would not have been hired or promoted even in the absence of the proven discrimination.

This language does not establish a new test,[3] but simply restates the test in *Texas*

---

1. Notwithstanding my disagreement with the same decision test, in order to provide a majority opinion and a clear test to follow in this circuit I join Judge Arnold's application of the same decision test.

2. Webster's Third New International Dictionary (Unabridged) 644 (1981).

3. Judge Arnold's reasoning is similar to the approach of the Eleventh Circuit in Title VII disparate treatment cases where there is direct evidence proving that the defendant-employer acted with a discriminatory motive. *See e.g., Joshi v. Florida State University Health Center*, 763 F.2d 1227, 1236 (11th Cir.1985), *cert. denied*, — U.S. —, 106 S.Ct. 347, 88 L.Ed.2d 293

*Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), in a different way.

In the dissent's focus on the word "discernible" it overlooks the fact that there are many ways to say the same thing. It also ignores the fact that the district court improperly quantified the employer's intent to discriminate when it found that although race was a discernible factor it was only a "minor" factor in the employment decision. The Supreme Court has expressly held that it is improper to quantify discriminatory intent. As the Supreme Court stated in *Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 277, 99 S.Ct. 2282, 2295, 60 L.Ed.2d 870 (1979): "Discriminatory intent is simply not amenable to calibration. It either is a factor that has influenced the legislative choice or it is not." [4]

The dissent's outright affirmance of the district court also fails to mention the fact that the district court, in using the same decision test, improperly placed the burden of proof onto the plaintiff to show that the same decision would not have been made absent race. Even under the principles articulated in *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), this is clear error. The plaintiff here is asked to establish much more than "but for" causation—he is improperly required to prove that race was the sole cause.

**The same decision test**

I now address my view that the same decision test should not apply to mixed motive cases, even when the burden of proof is properly placed on the employer.

Title VII is designed to protect victims against invidious discrimination which *in any way* influences or motivates an employment decision. That the employer has other nondiscriminatory reasons which enter into the decision is irrelevant. It is clear under the relevant case law that racial discrimination need not be the "sole" cause motivating the employer. Race is either a factor in the employment decision or it is not.

There is precedent for use of the same decision test in employment discrimination cases where liability is based upon a class action or in a disparate impact context.[5] But to extend such a test to cases of disparate treatment will provide hollow victories to most victims of racial discrimination and little real relief. Many litigants who successfully prove racial discrimination in the employment decision will now find that the spoils do not go to the victim but only to the victim's attorneys. Plaintiffs such as Bibbs will obtain attorneys' fees and perhaps injunctive or declaratory relief, but no award of back pay or reinstatement. After proving his or her case at the liability stage, to gain any other relief a plaintiff in an alleged mixed motive case will now face the additional uphill battle to rebut defendant's claim that the same decision would have been made absent race. Although Judge Arnold adopts the "but for" test for liability in *McDonald v. Santa Fe Trail*

(1985) (defendants failed to meet burden to prove those ultimately employed were better qualified than plaintiff); *Bell v. Birmingham Linen Service*, 715 F.2d 1552, 1557 (11th Cir. 1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 2385, 81 L.Ed.2d 344 (1984) (absent finding that employer set aside own bias in hiring recommendations, court cannot conclude that employer met its burden to prove same decision would have been made absent discrimination).

**4.** *See also Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 265, 97 S.Ct. 555, 563, 50 L.Ed.2d 450 (1977) ("Rarely can it be said that a legislature or administrative body operating under a broad mandate made a decision motivated soley by a

single concern, or even that a particular purpose was the 'dominant' or 'primary' one.").

**5.** *Cf. International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 359 n. 45, 97 S.Ct. 1843, 1867 n. 45, 52 L.Ed.2d 396 (1977). ("[T]he employer was in the best position to show why any individual employee was denied an employment opportunity. Insofar as the reasons related to available vacancies or the employer's evaluation of the applicant's qualifications, the company's records were the most relevant items of proof. If the refusal to hire was based on other factors, the employer and its agents knew best what those factors were and the extent to which they influenced the decision-making process.")

*Transportation Co.,* 427 U.S. 273, 282 n. 10, 96 S.Ct. 2574, 2580 n. 10, 49 L.Ed.2d 493 (1976), the practical effect will be that before a plaintiff can recover damages in a Title VII case, he or she will have to convince the court that race was the sole cause. Surely Congress did not intend such a result.

Certain well-established principles should govern our review of the district court's decision. First, under the teaching of *Burdine,* "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093. Second, as the district court acknowledged and as stated above, in a Title VII disparate treatment action a plaintiff need not prove that the sole reason for the employment decision was the discrimination but is required to show no more than that race was a "but for" cause. *McDonald,* 427 U.S. at 282 n. 10, 96 S.Ct. at 2580 n. 10. The district court, reciting the confusion of our own cases and those of other circuits,[6] resolved the apparent dilemma by finding that "racial considerations probably did play a minor role in the selection process, through the influence of Tresnak, but that plaintiff would not have been selected for the position even if his race had been disregarded." On the surface, the "same decision" reasoning is attractive and would simply relegate to appellate review the issue of whether the district court's factual findings are clearly erroneous. However, when race is shown to have been a discernible factor *in* the employment decision, as the district court found below, I conclude that the same-decision test is inappropriate under the principles of *Burdine.* Here, plaintiff has done far more than put forth a prima facie case of discrimination. He has successfully proven that race was a discriminatory factor *in* his employer's refus-

al to promote him. Rather than requiring proof that race was a "substantial" as opposed to a "minor" factor in the decision, Title VII simply requires that a plaintiff prove his or her claim of unlawful discrimination by persuading the court that "a discriminatory reason more likely [than not] motivated the employer." *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095. Nothing more is required of a plaintiff to establish liability under Title VII.

Once the trier of fact has found that race was a factor "in any way" influencing the decision, it is error to attempt to quantify race as a minor factor. *See* 42 U.S.C. § 2000e–2(a)(2) (1970 ed. Supp. V). Under the factual record presented here, once race was found to be a discernible factor in or influencing the decision, the additional conclusion that it was a minor factor is irrelevant to the Title VII analysis.

When race is shown at the liability stage to have been a factor in the employment decision, the employer should not be able to exculpate its proven invidious discriminatory practices by having a second chance to show that racial considerations did not affect the decision's outcome. This clearly contradicts Congress' purpose in enacting Title VII. I find that the record supports a finding that race clearly influenced the decision. Under these circumstances, I would reject as irrelevant and clearly erroneous the district court's unnecessary finding that "plaintiff would not have been selected for the position even if race had been disregarded."

The language of Title VII plainly recognizes the broad purpose of eliminating consideration of race from employment decisions. "Title VII prohibits *all* discrimination in employment based upon race, sex, and national origin. 'The broad, overriding interest, shared by employer, employee,

**6.** *See Tribble v. Westinghouse Electric Corp.,* 669 F.2d 1193, 1197 (8th Cir.1982), *cert. denied,* 460 U.S. 1080, 103 S.Ct. 1767, 76 L.Ed.2d 342 (1983) (determining factor); *Nanty v. Barrows Co.,* 660 F.2d 1327, 1333 (9th Cir.1981) (same decision test at relief stage); *Williams v. Boorstin,* 663 F.2d 109, 117 (D.C.Cir.1980), *cert. denied,* 451 U.S. 985, 101 S.Ct. 2319, 68 L.Ed.2d 842 (1981) (same decision test at liability stage); *Satz v. ITT Financial Corp.,* 619 F.2d 738, 746 (8th Cir. 1980) (a factor); *Marshall v. Kirkland,* 602 F.2d 1282, 1289 (8th Cir.1979) (motivating factor); *Cleverly v. Western Electric Co.,* 594 F.2d 638, 641 (8th Cir.1979) (determining factor).

and consumer, is efficient and trustworthy workmanship assured through fair and ... neutral employment and personnel decisions.'" *Burdine*, 450 U.S. at 259, 101 S.Ct. at 1096 (emphasis added) (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801, 93 S.Ct. 1817, 1823, 36 L.Ed.2d 668 (1973)). As Justice Marshall has stated:

> [I]t is important to bear in mind that Title VII is a remedial statute designed to eradicate certain invidious employment practices. The evils against which it is aimed are defined broadly: "to fail ... to hire or to discharge ... or otherwise to discriminate ... with respect to ... compensation, terms, conditions, or privileges of employment [because of such individual's race]" and "to limit, segregate, or classify . . . in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status [because of such individual's race]." 42 U.S.C. § 2000e–2(a) (1970 2d., Supp. V) (emphasis deleted).

*International Brotherhood of Teamsters*, 431 U.S. at 381, 97 S.Ct. at 1878 (Marshall, J., concurring and dissenting).

Although proof of actual motivation would be within a defendant's knowledge, I find it highly inappropriate, under the *Burdine* principles governing Title VII cases, to adopt the *Mt. Healthy* rationale and shift the burden to the defendant to show that plaintiff would *not* have been promoted even if his race had not been considered. *See also Givhan v. Western Line Consolidated School District*, 439 U.S. 410, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979); *NLRB v. Wright Line, A Division of Wright Line, Inc.*, 251 N.L.R.B. 150 (1980), *enforced*, 662 F.2d 899 (1st Cir.1981), *cert. denied*, 455 U.S. 989, 102 S.Ct. 1612, 71 L.Ed.2d 848 (1982) (NLRB adopts the *Mt. Healthy* test to determine liability in § 8(a)(3) cases).

*Mt. Healthy* exacts a distinctly different standard relating to recovery and burden of proof in constitutionally-protected conduct cases than does *Burdine*, which applied Title VII. A mixed motive case should be tried under the same tests set forth in *McDonald* and *Burdine*. To hold otherwise is to inject total confusion into the already difficult process faced by litigants who pursue relief under Title VII.[7]

BRIGHT, Senior Circuit Judge, separately concurring.

I concur in Judge Arnold's opinion. I write separately to indicate that I do not join the separate concurrences of Chief Judge Lay and Judge McMillian, and to emphasize my view that liability in this case rests upon the district court's finding of a causal relationship between race discrimination and the employment decision; that is, that race discrimination played a role, albeit a minor one, in selecting the person to be promoted.

In my opinion, the existence of some racial prejudice in the workplace that does not affect the employment decision will not support a determination of liability against an employer, where the discrimination and the decision are not shown to be causally connected.

Finally, I express disagreement with the suggestion in Chief Judge Lay's opinion that the "same decision test" should be rejected in mixed motive cases—"same decision" meaning that the employer would have made the same employment decision regardless of racial factors which might have entered into the hiring or promotion decision.

A simple hypothetical will illustrate the logic of applying the same decision test. Assume a college seeks a new president. Five candidates, four Caucasians and one black constitute the finalists. All are quali-

---

**7.** This discussion finds analogous aid in causation principles developed in tort law. In order to establish liability, a plaintiff does not have to show that the defendant's negligence (or here, racial discrimination) was *the* sole proximate cause of the accident. The burden is on the plaintiff only to show that the defendant's negligence was *a* proximate cause. In other words, the trier of fact must determine whether the defendant's negligence (discrimination) was *a* factor which served as *a* proximate cause of the accident (employment decision).

fied but one Caucasian possesses clearly superior talents. That person is selected, but during the selection process an individual on the committee states that he or she would not vote for a black person for president under any circumstances, and that bias is shown to have a minor impact on the decisionmaking process of the entire committee.[1] The mixed motive analysis offered by Chief Judge Lay seems to suggest that the college would be forced to hire and give backpay to the black applicant who would not have been selected as college president under a completely racially neutral selection process.

Under Judge Arnold's opinion, which I join, the college could limit the remedy, avoiding backpay and having to hire the rejected applicant, by showing by a preponderance of the evidence that the black applicant would not have received the appointment in any event.

In his dissent, Judge Ross construes the majority's use of the term "discernible factor" as containing no causal requirement. I disagree. I believe that term denotes the existence of a causal relationship in some degree in the present case, as shown by the district court's finding that "race played a minor role in the decision not to promote the plaintiff * * *." (Dist.Ct. Order at p. 8).

Thus, with the above explanation of my views, I agree with Judge Arnold's opinion for the court which imposes liability on the employer but permits the defendant to restrict the remedy by proving by a preponderance of the evidence that Bibbs would not have been promoted even if his race had not been considered in the employment decision.

McMILLIAN, Circuit Judge, concurring.

I concur in the decision to remand this case to the district court to determine whether appellant would have received the promotion but for the employer's discrimination in the selection process.

I agree with most of the analysis set forth in the majority opinion. I agree that proof of unlawful discrimination requires only proof that race was "a discernible factor" in the employment decision, a finding which would ordinarily entitle the plaintiff to declaratory relief, partial attorney's fees and prospective injunctive relief, and that, following proof of unlawful discrimination, the burden of persuasion and the burden of producing evidence on the issue of the scope of available retroactive relief are properly shifted to the employer. "The burden of showing that proven discrimination did not cause a plaintiff's rejection is properly placed on the defendant-employer because its unlawful acts have made it difficult to determine what would have transpired if all parties had acted properly." *League of United Latin American Citizens v. City of Salinas Fire Department,* 654 F.2d 557, 559 (9th Cir.1981), *citing Day v. Mathews,* 530 F.2d 1083, 1086 (D.C.Cir.1976) (per curiam).

However, I do not agree with the preponderance of the evidence standard of proof and would instead require the employer to prove by clear and convincing evidence that appellant would not have been promoted in the absence of discrimination. *See, e.g., King v. Trans World Airlines, Inc.,* 738 F.2d 255, 259 (8th Cir.1984).

The requirement of clear and convincing proof ... furthers Title VII's deterrent purpose. By making it more difficult for employers to defeat successful plaintiffs' claims to retroactive relief, the higher standard of proof may well discourage unlawful conduct by employers. In addition, the higher standard of proof is justified by the consideration that the employer is a wrongdoer whose unlawful conduct has made it difficult for the plaintiff to show what would have occurred in the absence of that conduct.

*Toney v. Block,* 705 F.2d 1364, 1373 (D.C. Cir.1983) (Tamm, J., concurring) (citations omitted).

---

1. To make my position clear, I would add that the presence of racial bias by one member of the selection committee which does not on a causal basis enter into the employment decision of the committee will not impose liability on the employer.

I would remand the case to the district court to determine whether the employer has shown by clear and convincing evidence that appellant would not have been promoted even in the absence of unlawful discrimination.

ROSS, Circuit Judge, with whom FAGG and BOWMAN, Circuit Judges, join, dissenting.

I dissent in part. I cannot agree with the majority's holding that proof that race was a "discernible factor" is sufficient in a mixed-motive context to establish intentional discrimination and liability under Title VII[1]. I adhere to the position that when the evidence suggests mixed-motives the plaintiff must prove that race was a "motivating factor" before he or she can prevail at the liability stage. *See Womack v. Munson*, 619 F.2d 1292, 1297 n. 7 (8th Cir.1980), *cert. denied*, 450 U.S. 979, 101 S.Ct. 1513, 67 L.Ed.2d 814 (1981). Retention of this standard is warranted by the language of the statute, the case law and by practical considerations.

Title VII prohibits employment practices that discriminate against any individual "because of" such individual's race, color, religion, sex or national origin. Section 703(a), 42 U.S.C. § 2000e–2(a) (1982), makes it unlawful for an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, *because of* such individual's race, color, religion, sex, or national origin; or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, *because of* such individual's race, color, religion, sex, or national origin.

(Emphasis added.) The "because of" language is crucial to employment discrimination suits brought under the statute and any adverse employment decision that is not arrived at "because of" one of the protected criteria is not unlawful under the statute. The majority, quite simply, ignores these operative words of the statute.

The "because of" requirement of the statute is not satisfied by the majority's "discernible factor" test[2]. While it is clear from the legislative history,[3] that the "because of" language does not require that a

---

[1]. Since the majority's holding reverses the judgment of the district court on the issue of liability, the issue of liability is before the court en banc, notwithstanding Chief Judge Lay's suggestion to the contrary. In his concurring opinion, Chief Judge Lay implies that the issue of liability is not before the court en banc because "the government *did not* dispute the finding of liability in the panel opinion and moved only to have this court adopt the 'same decision' test for determining a remedy on remand." *Ante* at 1325. I take exception to this suggestion for a number of reasons. First, "the finding of liability in the panel opinion" has been vacated. As Judge Arnold points out, "[w]e granted the petition for rehearing en banc, thus automatically vacating the panel opinion." *Ante* at 1319. Second, although the government chose to focus on the "same decision" test when arguing to this court en banc, in its petition for rehearing en banc it posed no less than four "questions of exceptional importance" relating to "a new dramatically reduced burden of proof" on the issue of liability. Third, the order granting the petition for rehearing en banc in this case did not limit the scope of the en banc proceedings to the remedy issue alone. The power over en banc proceedings resides with the court and not with the litigants. See FED.R.APP.P. 35; *Western Pacific Ry. Corp. v. Western Pacific Ry. Co.*, 345 U.S. 247, 73 S.Ct. 656, 97 L.Ed. 986 (1953). Lastly, the holding of the majority is more than just a decision on the remedy issue. It is a reversal of the judgment of the district court on the issue of liability and the dissent is not foreclosed from expressing its disagreement with the rationale of that result.

[2]. The majority clearly establishes a new test. Judge Arnold writes, "we now hold that plaintiff, having shown that race was a discernible factor at the time of the decision not to promote him, has established a violation of Title VII." *Ante* at 1319–20.

[3]. The Senate and the House both rejected an amendment which would have added the word solely to subsection (a) of section 2000e–2. 110 CONG.REC. 13,838 (1964); 110 CONG.REC. 2728 (1964).

plaintiff, such as Bibbs, prove that race is the sole factor in the employment decision, at a minimum, it means that a plaintiff must prove some causal relationship between race and the employment decision. The "discernible factor" test is deficient because it contains no causal requirement. Title VII is not violated simply because an impermissible factor plays some minor part in the employer's decision. *See Whiting v. Jackson State University*, 616 F.2d 116, 121 (5th Cir.1980). The Supreme Court has noted that to establish a violation of Title VII a plaintiff need only show that race was a "but for" cause. *McDonald v. Sante Fe Trail Transportation Co.*, 427 U.S. 273, 282 n. 10, 96 S.Ct. 2574, 2580 n. 10, 49 L.Ed.2d 493 (1976).

I object to the majority's "discernible factor" test for the additional reason that it dilutes the requirement that every Title VII plaintiff must prove intentional discrimination. In every employment discrimination case brought pursuant to Title VII, the theory of disparate treatment requires the aggrieved employee to prove that the employer acted with a discriminatory intent based on an impermissible factor. The ultimate factual inquiry in a Title VII case is whether the defendant intentionally discriminated against the plaintiff. *United States Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983). The Title VII plaintiff bears the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff and that the plaintiff has been the victim of intentional discrimination. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253–56, 101 S.Ct. 1089, 1093–95, 67 L.Ed.2d 207 (1981). The presence of an illegal factor in the employment process, without more, does not in my opinion constitute intentional discrimination. The racial or discriminatory factor must be acted upon; it must be a basis for the employment decision, and not just per-

ceived. As the Supreme Court has said, the plaintiff must demonstrate by competent evidence that whatever the stated reasons for his rejection, "the decision was in reality racially *premised." McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 805 n. 18, 93 S.Ct. 1817, 1825 n. 18, 36 L.Ed.2d 668 (1973) (emphasis added).

Because of the intentional discrimination requirement, the unlawful factor must be more than a "discernible factor"; it must be a "motivating factor". Proof of illegal motivation is critical to Title VII disparate treatment cases, *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 1854 n. 15, 52 L.Ed.2d 396 (1977), and a plaintiff can meet his or her burden of proof "by persuading the court that a discriminatory reason more likely motivated the employer * * *." *Burdine, supra*, 450 U.S. at 256, 101 S.Ct. at 1095. Thus, a violation of Title VII is established when the plaintiff proves that the unlawful factor operated as a "motivating factor" in the employment process or decision[4]. By "motivating factor" is meant that the discriminatory purpose was acted upon and produced conduct or an employment decision affected by it.

This court applied a "motivating factor" approach prior to *Burdine, supra.* In *Womack v. Munson*, 619 F.2d 1292 (8th Cir.1980), *cert. denied*, 450 U.S. 979, 101 S.Ct. 1513, 67 L.Ed.2d 814 (1981), this court noted:

> In cases challenging adverse employment actions as racially discriminatory under section 703(a), 42 U.S.C. § 2000e–2(a), we have held the court must look for the "motivating factor" when the evidence suggests mixed motives. *See, e.g., Marshall v. Kirkland*, 602 F.2d 1282 (8th Cir.1979); *Clark v. Mann*, 562 F.2d 1104, 1116–17 (8th Cir.1977) (42 U.S.C. § 1983 action. * * *

*Id.* at 1297 n. 7. Continued adherence to a "motivating factor" test is consistent with

---

**4.** The relevant inquiry is causation, not quantification.

the language of the statute and current Supreme Court caselaw and I see no justification for reducing a Title VII plaintiff's burden to that of proving only that race was a "discernible factor." [5]

In addition to the legal considerations, I have concerns about the practical ramifications of the majority's holding that proof that race was a "discernible factor" is sufficient to establish liability in a Title VII mixed-motive case. First, the majority failed to define what it means by "discernible" and this omission will result in confusion for the district courts. Secondly, this holding is an open invitation to attorneys to file frivolous or extremely marginal cases so that they can get attorneys' fees for showing that an unlawful factor was "discernible."

It is for all of the above reasons that I cannot join the majority's adoption of a "discernible factor" test for Title VII mixed-motive cases. As for the disposition of the instant case, I would affirm the judgment of the district court [6] and dismiss Bibbs' complaint because he failed to establish that race was a "motivating factor" in his nonselection for promotion.

A true copy.

---

**5.** Even the author relied upon by the majority, Brodin, *The Standard of Causation in the Mixed-Motive Title VII Action: A Social Policy Perspective,* 82 Colum.L.Rev. 292 (1982), takes the position that a plaintiff who establishes that a prohibited criterion was a *motivating factor* in the challenged decision thereby establishes a viola-tion of the Act and thus the defendant's liability. *Id.* at 323 (emphasis added).

**6.** I agree with the majority's assessment that the district court's findings of fact are not clearly erroneous, *ante* at 1321.