**Rodney POWELL, Appellant,**

v.

**MISSOURI STATE HIGHWAY AND TRANSPORTATION DEPARTMENT, Appellee.**

**No. 86–1902.**

United States Court of Appeals, Eighth Circuit.

Submitted April 14, 1987.

Decided July 2, 1987.

Lynne J. Bratcher, Kansas City, Mo., for appellant.

Tana K. Van Hamme, Jefferson City, Mo., for appellee.

Before ROSS, Circuit Judge, HENLEY, Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.

JOHN R. GIBSON, Circuit Judge.

Rodney Powell appeals from the adverse judgment of the district court[1] on his employment discrimination claim against the Missouri State Highway and Transportation Department brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a)(1), 5(g) (1982). He argues that the district court's finding that he was not subjected to a racially bigoted work environment was clearly erroneous in light of the conduct of Highway Department employees and their expressed discriminatory animus. He also contends that the district court erred in failing to consider this a mixed motive case. We affirm.

The Highway Department employed Powell as a maintenance crew member at its Knob Noster, Missouri facility from May 1, 1982 until August 17, 1984. Powell's position required an eighth grade education and some experience operating light equipment such as a dump truck, a front-end loader, and a tractor and mower. The Department employed about thirty crew members at four locations in Johnson County, Missouri, including two blacks in addition to Powell. Powell, however, was the first and only black employed at Knob Noster up to the time of his termination.

The district court found that the county supervisor, Bobbie G. Hutton, hired Powell solely because Powell was black. Hutton was told that he had to hire a black person for affirmative action purposes. Like all

---

1. The Honorable Scott O. Wright, Chief Judge, United States District Court for the Western District of Missouri.

other new employees, Powell was on probation for the first six months of his employment. Powell's performance at the end of this period rated marginal in the categories of attitude, initiative, responsibility, and knowledge of work. Based on the recommendations of Hutton and William Maddux, Powell's immediate supervisor, Powell was placed on an additional three months' probation. His performance improved to satisfactory in all categories, and he was taken off probation in February 1983.

The district court found that Maddux, Powell's supervisor, was a demanding boss. He seldom gave any compliments, and reprimanded Powell and the other employees for equipment breakage, tardiness, and excessive use of the telephone. Powell received a written reprimand in December 1983 for puncturing the radiator of a dump truck while removing ice and snow from it with a hoe and leaving the maintenance lot without telling anyone about the damage. The following April, Powell received a marginal performance rating on his annual evaluation in the areas of knowledge of work, initiative, responsibility, and dependability. Maddux and Hutton placed Powell on three months' probation as a result of this evaluation. During the probation period, Powell broke the power steering on a mower when he drove it into a ditch, punctured the rear tractor tire of a mower, and damaged another mower by driving it into a ditch. The court found that during both the summer of 1983 and 1984, Powell was relieved of mower duty because of numerous breakdowns. Powell also received reprimands for tardiness, excessive personal use of the office telephones, and poor execution of his flagging duties. On August 17, 1984, the Highway Department terminated Powell's employment. The Department cited excessive equipment breakdowns, excessive tardiness, and excessive absenteeism as the grounds for his termination. The Department filled the opening created by Powell's termination with a white male.

The district court found that Powell had established a prima facie case of employment discrimination under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802,

93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). The court further found that the Highway Department had articulated a legitimate, non-discriminatory reason for Powell's discharge, namely, excessive equipment breakdowns. The court then considered whether this reason was pretextual, and concluded that the preponderance of the evidence "established that [Powell] was not subjected to a racially bigoted work environment." *Powell v. Missouri State Highway & Transp. Dep't*, No. 85–4308–CV–C–5, slip op. at 7 (W.D.Mo. June 20, 1986). The court further concluded that Powell had "failed to meet his burden of establishing by a preponderance of the evidence that he received any disparate treatment because of his race." *Id.* The district court, therefore, rejected Powell's claim for injunctive and declaratory relief, damages, back-pay, and reinstatement.

On appeal, Powell argues that the district court's findings that he was not subjected to disparate treatment or to a racially bigoted work environment were clearly erroneous. He also argues that the district court erred in failing to analyze this case as one involving "mixed motives" under our decision in *Bibbs v. Block*, 778 F.2d 1318 (8th Cir.1985) (en banc).

**I.**

Our review of factual findings to determine whether they are clearly erroneous is governed by Civil Rule 52(a) as it has been defined in *Anderson v. City of Bessemer City*, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). A finding is " 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.* at 573, 105 S.Ct. at 1511 (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)). We are not free to reverse the district court simply because we believe that we would have weighed the evidence differently or disagree as to where it preponderates. *Id.; e.g., Mullins v. Uniroyal, Inc.*, 805 F.2d 307, 308 (8th Cir.1986). After carefully

reviewing the record in this case, we conclude that the district court's findings that Powell was not subjected to disparate treatment or to a racially bigoted work environment were not clearly erroneous.

Powell argues that the following testimony adduced at the trial impeaches the district court's factfindings:

(1) Hutton told Powell at his initial employment interview that he would possibly be called "nigger" at work. Tr. at 1–196.

(2) Maddux told one of Powell's co-workers, Rodney Norman, that Maddux had no use for blacks and didn't want blacks working for him. Tr. at 1–118.

(3) Rodney Norman overheard Maddux calling Powell a "nigger" at least two or three times. Tr. at 1–135.

(4) Maddux was reprimanded by the Highway Department for having called Powell a "nigger." Tr. at 2–198.

(5) Rodney Norman testified that Maddux was "onto [Powell] more than * * * anybody else." Tr. at 1–138.

Powell contends that the district court ignored this evidence, which amounted to "express discriminatory animus" on the part of Bill Maddux. Appellant's Brief at 8.

The district court's opinion, however, demonstrates that it was mindful of the evidence on which Powell relies. The court found that Hutton had warned Powell that he might be called "nigger" at work, and that Maddux had called Powell a "nigger" on at least one occasion. The court also found credible the evidence that Maddux stated on one occasion that he had no use for blacks on the job. The court further found, however, that Powell joined in the sporadic racial joking at the Knob Noster facility. Rodney Norman, Powell's own witness, testified further that he and Powell participated in racial joking, and that Powell had called Norman "whitey" and "honky." Tr. at 1–134. This testimony contradicted Powell's testimony that he had never participated in racial joking. Tr. 1–85. Moreover, the court noted that the only other black highway maintenance man employed in Johnson County testified that Powell had never complained to him that he was the victim of racial slurs or disparate treatment on account of his race. Tr. at 2–123, 2–124. Powell also testified that although he had filed formal complaints with the Missouri Commission on Human Rights and the Equal Employment Opportunity Commission, he did not raise in either complaint the issue of racial slurs. Tr. at 1–62.

In short, the court was presented with abundant evidence regarding the racial climate at the Knob Noster facility. Much of this evidence was oral testimony, and the district judge enjoyed the opportunity we now lack to observe the demeanor of the witnesses and weigh their credibility. We cannot conclude that it clearly erred in finding that Powell was not subjected to a racially bigoted work environment. Racially derogatory language in the workplace can be evidence of a discriminatory atmosphere, and is certainly not to be condoned. Title VII, however, is not necessarily violated by a few isolated racial slurs. *See Johnson v. Bunny Bread Co.,* 646 F.2d 1250, 1257 (8th Cir.1981).

We are likewise unpersuaded that the district court's conclusion that Powell suffered no disparate treatment because of his race was clearly erroneous. Both Powell and Rodney Norman testified to Maddux's being harder on Powell than on his other maintenance crew members. Specifically, Powell stated that Maddux verbally reprimanded him for equipment breakdowns but did not reprimand white employees. He admitted on cross-examination, however, that he simply might not have been present when such reprimands were given. Tr. at 1–64. Moreover, several other employees at the Knob Noster facility testified that Maddux reprimanded them for equipment breakdowns. *E.g.,* Tr. at 1–229, 2–119. Other employees testified that they did not believe Maddux was any harder on Powell than the other maintenance crew members. Tr. at 1–206, 1–207, 2–18, 2–119.

The district court concluded that Maddux was a demanding supervisor, and observed that he seldom, if ever, complimented Powell or any other member of his crew. There is ample evidence in the record to support this conclusion, as well as the court's ultimate conclusion that Powell was not subjected to disparate treatment. We have already outlined the trial court's findings regarding Powell's work record and his problem with equipment breakdowns. We reject his contention that the trial court clearly erred in finding that Powell was not a victim of disparate treatment.

## II.

Powell next contends that the district court erred in failing to consider this case as a "mixed motive" termination under this court's holding in *Bibbs v. Block*, 778 F.2d at 1323–24. In *Bibbs*, we held that "once a plaintiff establishes that a discriminatory consideration played some part in an employment decision adverse to [him], he has established a Title VII violation and is entitled to limited relief." *Johnson v. Legal Services of Arkansas, Inc.*, 813 F.2d 893, 899 (8th Cir.1987); *see Bibbs*, 778 F.2d at 1323–24. The district court had the benefit of our decision in *Bibbs* at the time of trial, and Powell's proposed findings of fact are couched in terms of "mixed motive." His argument regarding the applicability of *Bibbs* fails, however, because the district court's findings of fact demonstrate that he did not establish by a preponderance of the evidence that race played any part in the decision to fire him. These findings are in strong contrast to those in *Bibbs*, where "race was a discernible factor in the decision not to promote [the plaintiff]." *Bibbs*, 778 F.2d at 1324. *Bibbs*, thus, is inapplicable to this case. *See Mullins*, 805 F.2d at 309 ("a mixed motive case does not exist simply because a discriminatory reason might be inferred when the employee establishes a prima facie case").

The judgment of the district court is affirmed.