838 F.2d 291
 45 Fair Empl.Prac.Cas. 1648,
45 Empl. Prac. Dec. P 37,746
Larry BENNETT, Appellant,
v.
HOT SPRING COUNTY SHERIFF'S DEPARTMENT and Doyle Cook, as
Hot Spring County Sheriff and Individually, Appellees.
 No. 87-1531.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Nov. 12, 1987.
Decided Feb. 1, 1988.
 
 Darrell F. Brown, Little Rock, Ark., for appellant.
 Joe K. Hardin, Benton, Ark., for appellees.
 Before McMILLIAN, Circuit Judge, ROSS, Senior Circuit Judge, and BOWMAN, Circuit Judge.
 ROSS, Senior Circuit Judge.
 
 
 1
 Larry Bennett appeals from a final judgment of the district court[1] entered in favor of the Hot Spring County Sheriff's Department and Doyle Cook, the Hot Spring County Sheriff. Bennett brought this action against the sheriff and his department under Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e, et seq., and 42 U.S.C. Sec. 1981, alleging race discrimination in his termination from the sheriff's department. The district court rejected Bennett's claim of disparate treatment, finding that Bennett failed to prove that his termination would not have happened had he been white. For reversal, Bennett argues that the district court's finding is clearly erroneous in light of unrebutted evidence that whites were afforded pre-termination investigations but he was not. We affirm.
 
 
 2
 Bennett was employed as a deputy sheriff with the sheriff's department from September 30, 1984, until his termination on November 28, 1984. On November 24, 1984, Bennett was suspended from duty based upon information that a warrant had been issued for his arrest for aggravated assault and battery upon his girlfriend. Bennett's suspension was ordered by Chief Deputy Sheriff Leonard Tisdale, apparently as a temporary measure, until Sheriff Doyle Cook, who was out of town at the time, could review the matter. Later that same day, all charges against Bennett were dismissed upon the motion of Bennett's girlfriend and payment of costs. Notwithstanding dismissal of the charges, Bennett remained on suspension.
 
 
 3
 On November 28, 1984, Sheriff Cook returned to the department and was informed about the warrant issued for Bennett's arrest. After reviewing a police report of the alleged incident, and the sworn affidavit of the girlfriend, indicating that Bennett had threatened her with a gun, the sheriff terminated Bennett for conduct unbecoming an officer. At trial, Sheriff Cook admitted that he did not know that the charges against Bennett had been dismissed at the time he terminated Bennett. He indicated, however, that such information would not have influenced his decision to terminate Bennett.
 
 
 4
 Applying the analysis set forth in Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), the district court found that Bennett had established a prima facie case of disparate treatment. The court noted, for instance, that a white officer with the department previously had had serious allegations made against him and yet that officer had not been terminated simply on the basis of those allegations. By comparison, Bennett was terminated solely on the basis of the police report and the sworn statement of Bennett's girlfriend. The court noted, however, that the sheriff introduced evidence showing that he had also terminated white officers on evidence that, in the court's mind, was not significantly different from the evidence and allegations of the present case.[2]
 
 
 5
 The district court considered whether the sheriff and his department had articulated a legitimate, nondiscriminatory reason for Bennett's discharge. The court noted that the sheriff ran "a very tight ship" and that "[i]t doesn't take much to get terminated" from the department. The court regarded as credible the sheriff's testimony that he would have terminated a white officer under similar circumstances. The court also found credible the sheriff's statement that he attempted to replace Bennett with another black officer by contacting leaders of the black community.[3] Based upon this evidence, the district court concluded that the sheriff had overcome Bennett's prima facie case.
 
 
 6
 Finally, the district court considered whether Bennett had sufficiently overcome the sheriff's testimony by demonstrating that the proffered reasons were merely a pretext for discrimination. The court determined that Bennett had failed to make such a showing, and thus concluded that Bennett had failed his ultimate burden of proving that he would not have been terminated had he been white. The district court, therefore, rejected Bennett's claim for relief.
 
 
 7
 On appeal, Bennett argues that the district court's finding that he failed to rebut the defendant's case was clearly erroneous, because there was unrebutted evidence that whites were afforded pre-termination investigations but blacks were not. He relies on Boner v. Board of Commissioners of Little Rock Municipal Water Works, 674 F.2d 693, 696 (8th Cir.1982), in arguing that disparate treatment, which stands unrebutted and unexplained, creates a strong inference of discriminatory motive and pretext.
 
 
 8
 Our review of the district court's factual findings is governed by Federal Rule of Civil Procedure 52(a), which provides: "Findings of fact * * * shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Anderson v. Bessemer City, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)). "We are not free to reverse the district court simply because * * * we would have weighed the evidence differently or disagree as to where it preponderates." Powell v. Missouri State Highway and Transportation Department, 822 F.2d 798, 800 (8th Cir.1987) (citing Anderson, supra ). Furthermore, Rule 52(a) particularly demands great deference when findings are based on determinations regarding the credibility of witnesses. Anderson, supra, 470 U.S. at 575, 105 S.Ct. at 1512.
 
 
 9
 Having carefully reviewed the record under these standards, we conclude that the district court's finding that Bennett failed to prove that his termination was racially motivated is not clearly erroneous. The record demonstrates that the district court properly considered the evidence and the parties' respective burdens of proof under the analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04, 93 S.Ct. 1817, 1824-25, 36 L.Ed.2d 668 (1973) and Burdine, supra, 450 U.S. at 252-56, 101 S.Ct. at 1093-95. The court considered the fact that in several instances similarly situated white officers were afforded pre-termination investigations by the sheriff's department. On that basis, the court determined that Bennett had established a prima facie case of racial discrimination. The court then shifted the burden to the sheriff and his department to articulate a legitimate, nondiscriminatory reason for Bennett's termination. The district court found Sheriff Cook's testimony, that he fired Bennett without a pre-termination investigation "for conduct unbecoming an officer" and that he would have done the same to a white officer, to be credible. The court also found the sheriff's statement that he attempted to fill Bennett's position with another black officer by contacting the black community to be credible. Based on these statements, and the fact that the sheriff ran "a very tight ship," the district court determined that the sheriff had sufficiently rebutted Bennett's prima facie case. Finally, the court determined that Bennett had failed to produce further evidence of pretext sufficient to overcome the sheriff's testimony.
 
 
 10
 We find that the record clearly supports the district court's credibility determinations and findings, as well as its ultimate conclusion that Bennett was not subjected to disparate treatment.
 
 
 11
 Affirmed.
 
 
 
 [1]
 The Honorable Morris S. Arnold, United States District Court Judge for the Western District of Arkansas
 
 
 [2]
 The district court specifically noted that one white deputy was terminated for bootlegging, and another for being involved in prostitution, or at least being involved with a prostitute
 
 
 [3]
 Bennett's position was eventually filled by a white officer after Sheriff Cook was unable to find a qualified black officer to fill the job