**Linda F. DAVIS, Appellant,**

**v.**

**ARKANSAS DEPARTMENT OF HUMAN SERVICES; State of Arkansas, Appellees.**

**No. 88–1100.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 20, 1988.

Decided Nov. 30, 1988.

Gene O'Daniel, Little Rock, Ark., for appellant.

C. Kent Jolliff, Asst. Atty. Gen., Little Rock, Ark., for appellees.

Before HEANEY, BOWMAN and MAGILL, Circuit Judges.

MAGILL, Circuit Judge.

In 1984, the Arkansas Department of Human Services (the Department) terminated appellant Linda Davis (Davis) for conduct unbecoming a state employee after an internal investigation found that Davis had acted inappropriately in five separate instances. Davis, who is black, brought a Title VII action against the Department alleging that her termination was racially and sexually motivated. The district court[1] found that, although Davis established a prima facie case of discrimination, the Department showed that the termination was based on a legitimate, nondiscriminatory reason and Davis did not prove that the Department's reasons were pretextual. The district court dismissed the complaint and entered judgment for the defendant. We affirm.

## I. BACKGROUND

Davis worked as a food stamp applications processor for Jefferson County Social Services from February 1980 until October 1984. During her tenure at the Department, Davis experienced some difficulties

---

1. The Honorable Oren Harris, Senior District Judge for the Eastern District of Arkansas.

with her supervisor, Sam Stephens. In June 1983, Davis, who was pregnant, asked for permission to come in thirty minutes late because of morning sickness. Stephens denied her request, despite the fact that he allowed other employees, who were white, to play cards in the break room on a daily basis far in excess of the break time allowed black employees. Because of complications arising out of the maternity leave situation, Davis was suspended with pay for a time in June 1983, but was reinstated after filing an internal grievance. In December of 1983, Davis filed an EEOC charge against Stephens and the Jefferson County office. Another apparently discriminatory incident occurred in February 1984. At that time, Davis applied for transfer to a position advising AFDC clients—mostly women—on how to interview for jobs. She was clearly qualified for the position. Rather than hiring Davis, however, the Department hired a black male who was not a former state employee. Based on these incidents, Davis alleges that she was treated differently from black and white males, as well as from white females, in violation of Title VII.

While the facts set forth in the preceding paragraph present a prima facie case of discrimination, the facts underlying Davis' termination are separate and distinct from the allegedly discriminatory incidents. In July 1984, the food stamp investigative fraud unit conducted a routine review of an application submitted by Anthonette Guy (Guy).[2] Evelyn Bates, the investigator, discovered that Guy was involved with Lynette's Bakery, a business operated by Davis. When Evelyn Bates discovered possible improprieties regarding Guy's business relationship with Linda Davis, Bates reported the case to her supervisor, who promptly turned the case over to internal affairs.[3]

The internal affairs investigation revealed that Guy never received any wages despite working fulltime at Lynette's Bakery during 1982 and part of 1983. Internal affairs discovered that Linda Davis, doing business as Lynette's Bakery, reported to the Internal Revenue Service and the Arkansas Employment Security Division that she had paid $1,180 wages to Guy in 1982.[4] Also, Guy received a W–2 form showing such wages and withholding for 1982, and she reported those amounts on her 1982 tax forms even though she never received any of the money.

Internal affairs turned over its findings to the office of field operations of the Department. Pat Dalgren, the area administrator, reviewed the findings and recommended to Gordon C. Page, director of the office of program operations, that Davis be terminated. Dalgren based this recommendation on her findings of improprieties committed by Davis.[5] After reviewing the in-

---

**2.** The fraud unit routinely investigates changes in family conditions. Ms. Guy had recently separated from her husband, Miles Guy, who had previously been named a recipient of food stamps for the family.

**3.** The internal affairs unit investigates improprieties allegedly involving employees of the Department. Ann Ruffin is the head of the unit, and investigates as a matter of course when questions arise regarding a food stamp worker's business relationship with a food stamp recipient. Investigators Ralph Parsley and Susan Brewer conducted the investigation of Davis.

**4.** Davis also reported FICA withholding of $74.91 in 1982.

**5.** Specifically, Dalgren found that:
(1) Ms. Davis did in fact knowingly and deliberately report false information to the Employment Security Division in violation of State law or did in fact pay wages to a client and concealed information resulting in the client receiving more benefits than she was entitled.
(2) Ms. Davis did in fact report false information via the W–2 form in violation of the IRS Code Title 26 U.S.Code, Section 7207 or did in fact pay wages to a client and concealed information resulting in the client receiving more benefits than she was entitled.
(3) Ms. Davis did in fact knowingly and deliberately report false FICA information in violation of Section 208 of the Social Security Act as amended or did in fact pay wages to a client and concealed that information resulting in the client receiving more benefits than she was entitled.
(4) Ms. Davis was made aware of possible abuse of child/children and failed to report that possible abuse which is in violation of Arkansas State Statute [sic.] 42–807 through 42–818.
(5) Ms. Davis inappropriately used her position as a case worker to obtain the unlisted

vestigative file and Dalgren's memo, Page directed the Department's personnel administrator to fire Davis for conduct unbecoming a state employee.

In response to Davis' Title VII action against the Department, the district court found that although Davis established a prima facie case of discrimination, the Department showed that the termination was based on a legitimate, nondiscriminatory reason and Davis did not show any pretext. On appeal, Davis contends that she proved her case of sex and race discrimination by a preponderance of the evidence. She further contends that the district court erroneously found that the State had a legitimate nondiscriminatory reason for terminating the appellant and that the Department failed to prove a legitimate nondiscriminatory purpose in discharging the appellant.

## II. DISCUSSION

The district court's determination that the appellant failed to establish by a preponderance of the evidence that the reasons given for the appellant's termination were pretextual is a finding of fact. As such, the district court's finding is subject to the "clearly erroneous" standard of review governed by the Fed.R.Civ.P. 52(a), which provides that "[f]indings of fact * * * shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses."

If the district court's decision is plausible in light of the record viewed in its entirety, this court may not reverse, even though convinced that if we had been sitting as a trier of fact, we would have weighed the evidence differently. *Anderson v. City of Bessemer*, 470 U.S. 564, 574, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). We are not free to reverse the district court simply because we would weigh the evidence differently or disagree as to where it preponderates. *Powell v. Missouri State Highway & Transportation Dept.*, 822 F.2d 798, 800 (8th Cir.1987). Furthermore, Rule 52(a) demands great deference when findings are based upon determinations regarding the credibility of witnesses. *Anderson, supra*, 470 U.S. at 575, 105 S.Ct. at 1512.

■ A Title VII claim requires a three-part presentation of proof. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). First, a plaintiff must make out a prima facie case of discrimination by a preponderance of the evidence. If the plaintiff makes out a prima facie case, the defendant must show a legitimate, nondiscriminatory reason for the decision. Finally, if defendant makes such a showing, plaintiff must prove by a preponderance of the evidence that the reason given by defendant for the challenged employment action was pretextual.

■ The first element of Davis' claim—proof of a prima facie case of discrimination—is not disputed by the Department. The district court clearly held that Davis established a prima facie case of discrimination by demonstrating that Sam Stephens treated her differently from white employees and male employees while she was pregnant and when she applied for a new position.

Davis argues that the five reasons relied on by the Department in its decision to fire her were not legitimate nondiscriminatory reasons. The district court concluded that Davis was terminated because she submitted false information to the Internal Revenue Service and the Arkansas Employment Security Division. The evidence supports this conclusion. At trial, the Department proved this misconduct by testimony regarding the internal affairs unit's investigation. Clearly, the district court found the Department's testimony credible.[6] Given the great deference required when district court findings are based on credibility,

---

phone number of a client for her own personal reasons thereby causing the client undue mental anguish.
Dist.Ct.Mem.Op. at 4–5 (December 9, 1987).

**6.** In addition, as the district court noted, Davis admitted that she had reported paying wages to Anthonette Guy although she never actually paid Guy any wages.

we agree that Davis was fired for a legitimate, nondiscriminatory reason.

Davis relies on the incidents she used to establish a prima facie case of discrimination in arguing that the reasons advanced by the Department are pretextual. As the district court found, however, these incidents had nothing to do with Gordon Page's decision to fire her. Page testified that he based his decision solely on the report submitted by internal affairs and, while he had some knowledge of Davis' problems with Sam Stephens, these earlier incidents did not affect his decision to terminate Davis. The district court found Page's testimony credible and found that Davis failed to establish by credible testimony that Page relied on any factors other than those set forth in the report. This finding is supported by the evidence and not clearly erroneous.

III. CONCLUSION

After a careful review of the record in this case, we have determined that the district court's findings, which are based largely on credibility determinations, are not clearly erroneous. Therefore, we affirm the dismissal of Davis' claim.