857 F.2d 1047
 48 Fair Empl.Prac.Cas. 209,
48 Empl. Prac. Dec. P 38,402
Callie WALSDORF, Plaintiff-Appellant,
v.
BOARD OF COMMISSIONERS FOR THE EAST JEFFERSON LEVEE DISTRICT
and John Lauricella, Jr., Defendants-Appellees.
 No. 87-3845.
 United States Court of Appeals,
Fifth Circuit.
 Oct. 18, 1988.
 
 Dale C. Wilks, New Orleans, La., for plaintiff-appellant.
 Bruce G. Reed, New Orleans, La., for defendants-appellees.
 Appeal from the United States District Court for the Eastern District of Louisiana.
 Before CLARK, Chief Judge, GARZA, and POLITZ, Circuit Judges.
 GARZA, Circuit Judge:
 
 
 1
 This is an appeal from a U.S. Magistrate's decision in an employment discrimination case. The trial court determined that: (1) the plaintiff had not been the victim of sex discrimination in her failure to obtain a promotion; (2) neither did she make out a claim under the equal protection clause of the fourteenth amendment, or 42 U.S.C. Secs. 1981 and 1983; (3) plaintiff was the victim of retaliatory actions, in violation of Title VII of the Civil Rights Act of 1964, taken by her employer in response to her filing of a sex discrimination charge with the Louisiana Civil Service Commission and the Equal Employment Opportunity Commission. Plaintiff appeals from the decision that she was not the victim of sex discrimination in the promotion process and that she did not state a separate cause of action under the equal protection clause of the fourteenth amendment and Secs. 1981 and 1983 based upon retaliation. We reverse the district court's decision regarding intentional discrimination; we affirm the finding of retaliation in violation of Title VII and we remand for further consideration of the appropriate remedy, consistent with this opinion.
 
 Background
 
 2
 Plaintiff Callie Walsdorf, a white female officer in the East Jefferson Levee District Police Force, filed suit in the United States District Court for the Eastern District of Louisiana pursuant to Title 42 U.S.C. Sec. 2000e (Title VII), 42 U.S.C. Secs. 1981 and 1983 and the equal protection clause of the fourteenth amendment. She claimed that the defendants, Board of Commissioners for the East Jefferson Levee District and John Lauricella, Jr., President of the East Jefferson Levee District, discriminated against her on the basis of sex in not selecting her for promotion to the position of Assistant Superintendent II of the Levee District Police Force. She also claimed that defendants retaliated against her in connection with her filing of complaints with the State Civil Service Commission and the Equal Employment Opportunity Commission (EEOC).
 
 
 3
 On March 27, 1984 the Department of State Civil Service posted a notice at the East Jefferson Levee District Police Station announcing a vacancy for the position of Police Assistant Superintendent. Three people applied for the position: Sgt. Callie Walsdorf, Officer Perry Stewart and John T. Prados. Plaintiff Walsdorf and Officer Stewart were employed at the East Jefferson Levee District; Prados had been employed for twenty-five years outside of the East Jefferson Levee District as a civil and criminal process server with the Jefferson Parish Sheriff's Office. Mr. Prados had been defendant Lauricella's life-long friend. He was also defendant's personal choice to fill the Assistant Superintendent's position. It is undisputed that plaintiff was the most qualified applicant. It is likewise undisputed that Prados, who was eventually appointed to fill the vacancy, was unqualified at the time he applied.
 
 
 4
 As president of the East Jefferson Levee District, defendant Lauricella possessed the authority to appoint the new Assistant Superintendent. His discretion in this regard, however, was not unfettered. Each candidate completed an application process which involved, inter alia, obtaining a Special Officer's Commission from the Louisiana Department of Public Safety. Since Mr. Prados had not completed the requisite 240 hours of police classroom training, his application for a commission was initially rejected. The record indicates that Louisiana State Senator Hank Lauricella, brother of defendant John Lauricella, called upon Col. Wiley McCormack, Superintendent of the Louisiana Department of Public Safety, to request that the Col. "look into" the candidacy of John Prados, whereupon the Department changed Mr. Prados's application for a Special Officer's Commission from a rejection to an approval. Officer J.C. Ladd, of the East Jefferson Levee District, had occasion in the latter part of April, 1984 to deliver certain Civil Service papers concerning the filling of the position of Assistant Superintendent to defendant Lauricella. These documents included instructions for filling the position and apparently listed Sgt. Walsdorf as one of the eligible candidates. Upon reading the papers, defendant declared, "Well, this is the way Civil Service wants to play their games; ain't no bitch gonna get this job. My man's already picked out and that's the way it's going to be."
 
 
 5
 Sgt. Walsdorf was subsequently denied a promotion to the rank of lieutenant. The position went instead to a male sergeant, notwithstanding that Walsdorf achieved the highest score on a competitive examination of all candidates for the promotion. She did not file a discrimination charge with the EEOC in response to this particular incident. That it took place, however, does appear as evidence in the instant case.
 
 
 6
 On May 1, 1984 plaintiff filed a charge of sexual discrimination with the EEOC. The Commission issued to plaintiff a formal Notice of Right to Sue letter on May 1, 1986. Plaintiff also filed an appeal with the Louisiana State Civil Service Commission alleging sexual discrimination in her nonselection for the Assistant Superintendent job. She filed suit in the instant case on July 17, 1986. Trial before the U.S. Magistrate commenced on August 10, 1987. In addition to the claim of gender discrimination, Walsdorf alleged and proved five incidents of retaliation on the part of defendant Lauricella related to her filing of charges with the EEOC and the State Civil Service Commission.
 
 
 7
 In December, 1984, approximately seven months after plaintiff filed her charges with the EEOC, defendant Lauricella ordered that a low band radio be removed from plaintiff's official vehicle. Plaintiff claimed that she needed the radio to pick up transmissions from local agencies in connection with major local disasters. On April 19, 1985, Walsdorf was given permission to attend a three-day leadership and personnel management seminar. Later on the same day defendant Lauricella rescinded that permission. Other male officers from the Levee District were allowed to attend the training course.
 
 
 8
 Ten days later, on April 29, 1985, Lauricella transferred Sgt. Walsdorf from her duties as a road commander to a desk job in the Levee District office, under the supervision of the secretary there. Although the transfer did not result in a demotion in rank or diminution in pay, plaintiff's new position essentially entailed running errands. Six months later, Sgt. Walsdorf resumed her former duties. On another occasion, defendant Lauricella, apparently without reason, ordered the plaintiff to leave the scene of a maritime accident to which she had responded. In a final incident, on June 12, 1986, Lauricella called a meeting of all employees of the East Jefferson Levee District. When the meeting came to order, Lauricella announced in front of the entire membership that he would not begin as long as Callie Walsdorf and Officer J.C. Ladd were present because "they might be wired for Civil Service." He asked them to leave and the meeting proceeding in their absence.
 
 
 9
 As further evidence of defendant's animus toward women, plaintiff presented a memorandum written by defendant which exempted Sgt. Walsdorf and the only other female officer in the Levee District from standby duty during the Hurricane Danny emergency. He testified that, in his opinion, the women should be at home because, "somebody's got to make the beds and cook the food and, you know, do the things that's [sic] necessary....men can't do it." He stated that he thought he was "doing a good deed" in exempting the two females from standby duty.
 
 
 10
 The trial court concluded that plaintiff made out a prima facie case of gender discrimination under Title VII and that the proffered explanation of the defendant for his selection, that Prados possessed "street sense," was unworthy of credence. Nevertheless, the magistrate held that Walsdorf was not the victim of intentional sex discrimination. He concluded that Prados was selected for the position of Assistant Superintendent before the vacancy was announced and before defendant Lauricella learned of plaintiff's intention to apply for the job. The court found no evidence that Prados was preselected for the purpose of excluding a female from the position. Rather, he was selected because of the "long-time friendship" that existed between him and Lauricella.
 
 
 11
 As to Sgt. Walsdorf's claim of retaliation, the trial court concluded that the defendant's actions in reassigning the plaintiff to run errands for the Levee District Secretary, in removing the special radio from her vehicle, in preventing her from attending the law enforcement seminar, in ordering her from the scene of the maritime accident, and in excluding her from the meeting of all Levee Board members were connected with her filing complaints with the EEOC and the State Civil Service Commission. The magistrate ordered that the plaintiff recover nominal damages of $1. He also awarded Sgt. Walsdorf costs and attorney's fees, reduced by sixty percent because she had failed to prevail on her Title VII discrimination claim.
 
 
 12
 In addition, the court dismissed her Sec. 1981 and Sec. 1983 claims. With respect to the Sec. 1983 action, the court observed that there is no independent constitutional claim under that statute based on retaliatory actions in violation of Title VII. It cited for support Irby v. Sullivan, 737 F.2d 1418 (5th Cir.1984). The court dismissed her fourteenth amendment equal protection claim due to her failure to allege or establish class-based animus on the part of the defendant.
 
 
 13
 Plaintiff raises two issues on appeal: (1) whether the trial court erred in finding that defendants Board of Commissioners and John Lauricella, Jr. did not discriminate against her on the basis of gender when they denied her the promotion to Assistant Superintendent II; and (2) whether plaintiff stated a separate cause of action under the equal protection clause of the fourteenth amendment and Secs. 1981 and 1983 based upon retaliation against her in connection with her filing of claims with the Equal Employment Opportunity Commission and the State Civil Service Commission. We address each issue in turn.
 
 Discussion
 I. Title VII
 
 14
 The familiar framework established by the United States Supreme Court for allocating the burdens of proof and persuasion in a Title VII case guided the trial court here as it does in all such cases. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) (setting out the order and allocation of proof in private employment discrimination cases under Title VII). Sgt. Walsdorf had little difficulty establishing her prima facie case. She proved that: (1) she belonged to a class protected by Title VII; (2) she applied and was qualified for a promotion for which her employer was seeking applicants; (3) despite her qualifications, she was rejected; and (4) after her rejection, the position continued to exist. McDonnell Douglas, 411 U.S. at 802, 93 S.Ct. at 1824. This created a presumption that the defendants discriminated against the plaintiff on the basis of her sex. Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). The burden then shifted to Lauricella to articulate a legitimate nondiscriminatory reason for preferring Prados over Walsdorf. Defendant Lauricella claimed to have chosen Prados over Sgt. Walsdorf and Officer Stewart because, according to defendant, Prados was "street wise."
 
 
 15
 Once an employer articulates some reason other than a preference for males over females as a justification for an employment decision, the McDonnell Douglas-Burdine presumption " 'drops from the case,' ... and 'the factual inquiry proceeds to a new level of specificity.' " United States Postal Service Board of Governors v. Aikens, 460 U.S. 711, 715, 103 S.Ct. 1478, 1481, 75 L.Ed.2d 403 (1983). That factual inquiry in this case should address whether Lauricella treated Walsdorf less favorably than Prados, at the time the promotion decision was made, because Sgt. Walsdorf is a woman. Id.; Furnco Construction Corp. v. Waters, 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978). Defendant was unable to establish that the effective discharge of the duties of an Assistant Superintendent II required street "wisdom" or that Mr. Prados, in fact, possessed such a faculty. The magistrate quite reasonably found Mr. Lauricella's proffered explanation unworthy of credence.
 
 
 16
 Nevertheless, the trial court found that Prados was preselected to fill the vacancy because of the long-time friendship that he enjoyed with the defendant. There was no evidence, according to the court, to suggest that the exclusion of a female from the position was the purpose for his preselection. Plaintiff argues on appeal that once the trial court dismissed defendant's proffered explanation as unconvincing, judgment should have been entered in her favor on the question of discrimination. For support, plaintiff points to Burdine, in which the Supreme Court stated that a Title VII claimant may successfully carry her burden of persuasion "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Burdine, 450 U.S. at 256, 101 S.Ct. at 1095.
 
 
 17
 The Supreme Court has also recognized, however, that the facts of Title VII cases necessarily vary and that the McDonnell Douglas framework may not be applicable "in every respect to differing factual situations." McDonnell Douglas, 411 U.S. at 802 n. 13, 93 S.Ct. at 1824 n. 13. In addition, the Court has warned against a "rigid, mechanized, or ritualistic" adherence to the prima facie case method established in McDonnell Douglas. Aikens, 460 U.S. at 715, 103 S.Ct. at 1481 (quoting Furnco, 438 U.S. at 577, 98 S.Ct. at 2949). Plaintiff's analysis would have us ignore the evidence that defendant Lauricella preselected Mr. Prados for the position in a process which, at least initially, may not have been motivated in any way by his animus toward women in the workplace. We believe that such analysis does not comport with the guidance afforded us by the Supreme Court in the McDonnell Douglas-Burdine-Aikens line of cases.
 
 
 18
 At the same time, however, we believe that the trial court misplaced the focus of its attention upon the defendant's intentions prior to the beginning of the actual selection process rather than concentrating on Mr. Lauricella's state of mind at the time the selection was actually made. It is true that, in January and February of 1984, defendant was "taking Mr. Prados around" and introducing him as "the next Assistant Superintendent" to Chief Villanueva and others. Although defendant had apparently made up his mind as early as three months before the Levee District announced the opening of the position, the fact is that in January and February of 1984 the decision was not yet defendant's to make. Defendant Lauricella testified that "everybody had the right to apply for the position." Indeed, he assigned Chief Villanueva to "screen" the candidates once their applications were complete. In addition, each applicant was required to qualify for a Special Officer's Commission from the Louisiana Department of Public Safety.
 
 
 19
 The defendant's intentions at the time that he reviewed those applications, rather than his state of mind three months prior to that time, should have been the focus of the trial court's attention. Once Sgt. Walsdorf's name appeared on the list of candidates eligible for promotion she was entitled to a fair consideration for the job in a process that did not limit her chance of success because of her gender. Defendant made his intentions during the evaluation process known to at least one witness in this case and they appear in the record: "Ain't no bitch gonna get this job."
 
 
 20
 It is quite clear that defendant's chauvinistic attitude toward women played some role in his decision not to promote Sgt. Walsdorf once he was aware that she was a serious candidate for the position. Thus, sex discrimination was a motivating factor at the time defendant Lauricella selected Mr. Prados. Title VII forbids not only the failure to hire or the discharge of an individual "because of such individual's race, color, religion, sex, or national origin;" the statute also makes it unlawful for an employer "to limit, segregate, or classify his employees ... in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee." Section 703(a)(2) [emphasis added]. Discrimination need not be the sole reason for an adverse employment decision. "No more is required to be shown than that discrimination was a 'but for' cause." McDonald v. Santa Fe Trail Transportation Co., 427 U.S. 273, 282 n. 10, 96 S.Ct. 2574, 2580 n. 10, 49 L.Ed.2d 493 (1976).
 
 
 21
 Many factors can, and often do, influence the actions of employers. An employment decision can be motivated by legitimate, illegitimate, and illegal considerations all at the same time. An employer's action does not violate Title VII simply because a discriminatory motive plays some part in an employment decision. In this circuit, the forbidden motive must be a "significant factor." Whiting v. Jackson State University, 616 F.2d 116, 121 (5th Cir.1980); Garcia v. Gloor, 609 F.2d 156, 160 (5th Cir.1980), cert. denied, 449 U.S. 1113, 101 S.Ct. 923, 66 L.Ed.2d 842 (1981).[1]
 
 
 22
 The trial court concluded that Prados was selected because of the long-time friendship that he enjoyed with defendant Lauricella. The magistrate found "no evidence to suggest that [the decision] was based on sex discrimination." After a thorough reading of the entire record in this case, we are left with a definite conviction that this finding was in error. See United States v. United States Gypsum, 333 U.S. 364, 394, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948) (questions of fact subject to "clearly erroneous" standard of review on appeal); Fed.R.Civ.P. 52(a). See also Pullman Standard v. Swint, 456 U.S. 273, 287-88, 102 S.Ct. 1781, 1789-90, 72 L.Ed.2d 66 (1982) (intentional discrimination under Title VII is a finding of fact subject to clearly erroneous standard of review). The trial court was entitled to consider all admissible circumstantial evidence of discrimination. United States Postal Service Board of Governors v. Aikens, 460 U.S. 711, 714 n. 3, 103 S.Ct. 1478, 1481 n. 3, 75 L.Ed.2d 403 (1983). Such evidence was substantial in this case. Nonetheless, despite defendant's discriminatory statements and attitudes about women in general, and about this plaintiff in particular, the magistrate concluded that the evidence here established "at best, within the factual confines of this case, only an inference of a predisposition to discriminate." We cannot agree.
 
 
 23
 When we focus upon defendant's intentions in April of 1984, the time period during which the defendant actually considered the applicants for the promotion (as opposed to January and February of 1984, three months prior to the relevant period of time), we are led to the inescapable conclusion that defendant's discriminatory animus toward women played a significant part in his decision to select Mr. Prados instead of Sgt. Walsdorf. The plaintiff was, by far, the most qualified applicant. Mr. Prados was able to meet the bare minimum qualifications only upon the intervention of defendant Lauricella's brother, the state senator. Defendant was heard to declare, at the time he considered the candidates for the promotion, "ain't no bitch gonna get this job." There may exist a more unequivocal way to express an intent to exclude women from consideration for a promotion, but none come readily to mind.
 
 
 24
 Subsequent to the selection of Mr. Prados over Sgt. Walsdorf, defendant Lauricella promoted a male sargeant to the position of lieutenant, notwithstanding that Sgt. Walsdorf achieved the highest score on a competitive examination of all candidates for that rank. We recently upheld a claim of sex discrimination upon facts similar to those at issue here. Glass v. Petro-Tex Chemical Corp., 757 F.2d 1554 (5th Cir.1985). In Glass, we concluded that evidence of a supervisor's demonstrated sexual bias against women, combined with his promotion, on two occasions, of less qualified males instead of the female plaintiff, was sufficient to sustain a claim of sex discrimination in violation of Title VII. Indeed, the evidence of discriminatory animus is considerably more compelling here than was the case in Glass.
 
 
 25
 Finally, and in addition to the substantial evidence of defendant's sexual biases, discussed above, there is his testimony at trial expressing his belief that women should remain at home "to make the beds and cook the food and, you know, do the things that's [sic] necessary." It is clear from this record that Sgt. Walsdorf's chances for success in this selection process were seriously limited because of her gender. For these reasons, we must reverse the decision of the trial court. We hold that the defendant's sexually discriminatory animus played a significant part in his decision to promote Mr. Prados instead of Sgt. Walsdorf. His actions thus violated Title VII.
 
 
 26
 II. Retaliation.
 
 
 27
 The trial court also found that defendant Lauricella's actions in reassigning Sgt. Walsdorf to work with the secretary of the Levee District, in rescinding his authorization for her to have a special radio in her vehicle, in preventing her from attending a leadership seminar, in ordering her from the scene of an accident, and in excluding her from a meeting of the Levee Board, were connected with her filing of complaints with the EEOC and the Louisiana State Civil Service Commission. We find this conclusion amply supported by the evidence. Therefore, we affirm the lower court's determination that defendant retaliated against Sgt. Walsdorf in response to her filing of sex discrimination charges with the EEOC and the State Civil Service Commission.
 
 III. Damages
 
 28
 Plaintiff was the victim of sexual discrimination in violation of Title VII. She is, therefore, entitled to such relief as will make her whole. Franks v. Bowman Transportation Co., Inc., 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976); Albemarle Paper Co. v. Moody, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975). Instatement of Sgt. Walsdorf to the position of Assistant Superintendent, however, would involve removing the incumbent, Prados. Historically, we have been properly hesitant to impose such an extreme remedy. United Papermakers and Paperworkers v. United States, 416 F.2d 980, 988 (5th Cir.1969), cert. denied, 397 U.S. 919, 90 S.Ct. 926, 25 L.Ed.2d 100 (1970). Indeed, the Supreme Court has cautioned against the use of a remedy that "bumps" one employee from a position in order to fill it with the victim of discrimination. Firefighters v. Stotts, 467 U.S. 561, 579, 104 S.Ct. 2576, 2588, 81 L.Ed.2d 483 (1983). Several lower courts have recognized the award of front pay as an alternative to the bumping of an incumbent employee. Locke v. Kansas City Power and Light Co., 660 F.2d 359 (8th Cir.1981); Patterson v. American Tobacco Co., 535 F.2d 257 (4th Cir.1976), cert. denied, 429 U.S. 920, 97 S.Ct. 314, 50 L.Ed.2d 286 (1976). See also Franks v. Bowman Transportation Co., Inc., 424 U.S. 747, 780-81, 96 S.Ct. 1251, 1271-72, 47 L.Ed.2d 444 (1976) (concurring opinion of Burger, C.J., suggesting front pay as alternative to award of retroactive seniority). Where possible, we should fashion remedies that serve the purposes of Title VII--remedies that compensate the victims of past discrimination and deter employers from the inclination to discriminate in the future--and, at the same time, avoid tampering with the rights of other employees who did not participate in the discriminatory activity.
 
 
 29
 On remand, the district court is to award Sgt. Walsdorf back pay at the salary of Assistant Superintendent from the date that she was denied the promotion up to the date of this judgment. In addition, she is entitled to front pay at the salary of Assistant Superintendent from the date of this judgment onward.[2]
 
 
 30
 Having prevailed in her Title VII action and on her claim of unlawful retaliation, plaintiff is entitled to full reimbursement of her attorney's fees, the calculation of which we leave to the district court on remand. Also, in due course, the trial court should determine an appropriate amount in its award of attorney's fees to cover this appeal and the proceedings on remand.
 
 
 31
 Our determination of this case on the basis of Title VII renders it unnecessary for us to consider plaintiff's Sec. 1981 and Sec. 1983 claims; the remedies afforded her under Title VII are sufficient to make her whole for the damage she has suffered.
 
 
 32
 For the reasons stated herein, the decision of the district court is AFFIRMED in part, REVERSED in part, and REMANDED for calculation of back pay, front pay and attorney's fees.
 
 
 
 [1]
 We are fully aware of the split that exists among the circuits regarding the applicable standard of causation in determining Title VII liability. The First, Third, Sixth and Seventh Circuits hold that a Title VII plaintiff may prevail only upon a showing that he or she would have received the job absent the discriminatory motivation. In Bibbs v. Block, 778 F.2d 1318 (8th Cir.1985) (en banc), the Eighth Circuit upheld the liability of an employer merely upon the showing that "an unlawful motive played some part in the employment decision." Bibbs, 778 F.2d at 1323. The Bibbs doctrine limits a plaintiff's recovery upon an employer's proof that discrimination was not the determinative factor in the employment decision. In other words, the Eighth Circuit separates the issue of liability under Title VII from that of remedy. The Ninth Circuit, like ours, requires that the discriminatory motive be a "significant" factor, but not necessarily the determinative factor. Whiting, 616 F.2d at 121
 Furthermore, we are aware that the United States Supreme Court has granted cert. in a case that may resolve these causation issues. See Hopkins v. Price Waterhouse, 825 F.2d 458 (D.C.Cir.1987), cert. granted, --- U.S. ----, 108 S.Ct. 1106, 99 L.Ed.2d 268 (1988) (employer held liable under Title VII where plaintiff proved that "sexually stereotyped attitudes towards women" were a significant factor in employment decision notwithstanding that employer had other legitimate reasons for its decision). But until such time as the Supreme Court attunes these divergent positions, this circuit requires proof that a discriminatory motive constituted a "significant factor" in an employment decision before an employer can be held liable under Title VII.
 
 
 [2]
 Under the circumstances of this case, the award of front pay places responsibility for the discrimination where it belongs: squarely upon the shoulders of defendants Lauricella and the Levee District Board of Commissioners. An order placing Sgt. Walsdorf in the position of Assistant Superintendent might have the salutary effect of putting her in her "rightful place," but it would achieve this result at the expense of Mr. Prados who, after all, had nothing whatever to do with the unlawful employment decision made by defendant Lauricella. Moreover, awarding the promotion to plaintiff would not serve the prophylactic purposes of Title VII; by forcing defendant merely to shuffle the positions of his employees we do not necessarily deter him from engaging in discriminatory practices in the future
 Our decision in this case, however, does not foreclose the possibility that fashioning "make whole" relief, under the appropriate circumstances, may necessitate adjustment of the rights of majority group employees as a way to compensate victims of discrimination. See Volger v. McCarty, Inc., 451 F.2d 1236, 1238-39 (5th Cir.1971) (court "must be free to deal equitably with conflicting interests of white employees in order to shape remedies that will most effectively protect and redress the rights of the Negro victims of discrimination").