Clifton **DAVIS**, Plaintiff,

v.

**YAZOO COUNTY WELFARE DEPARTMENT,** Defendant.

Civ. A. No. 5:88–cv–55WS.

United States District Court, S.D. Mississippi, Western Division.

Nov. 8, 1994.

---

James P. Brantley, Jackson, MS, for plaintiff.

Robert E. Sanders, Mississippi Atty. General's Office, Jackson, MS, for defendant.

## MEMORANDUM OPINION

WINGATE, District Judge.

Tried on its merits to this court sitting without a jury on an earlier date, this lawsuit is again before this court pursuant to a "remand for reconsideration" ordered by the United States Court of Appeals for the Fifth Circuit. Previously, this court, after having received testimony and documentary evidence, found for the plaintiff on his claim of sex discrimination under Title VII[1] of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2, as amended. Aggrieved by this court's finding, the defendant, Yazoo County Welfare Department, appealed. Thereafter, the Fifth Circuit filed its written opinion in *Davis v. Yazoo County Welfare Dept.*, 942 F.2d 884 (5th Cir.1991), wherein it voiced concern whether this court had mistakenly weighed the conflicting evidence. The Fifth Circuit panel then asked this court to take a second look at the evidence in light of several observations made by the panel. This court has taken that second look, having now the benefit of the entire written record, and concludes that its initial holding was in error for the reasons which follow. Accordingly, this court now reverses itself and finds for the defendant.

So that the reader will understand this reversal of positions,[2] this opinion will be divided into three sections. In the first section, this court will set out in full the bench opinion it rendered at the close of all the evidence. In the second section, this court will submit pertinent quotes from the Fifth Circuit's opinion which highlight their concern with various aspects of this court's bench opinion. In the third and final section, this court will address the concerns of the Fifth Circuit and then explain why, upon reconsideration, this court now feels obliged to reverse its holding.

## I. THE BENCH OPINION

Set out below is this court's full bench opinion delivered at the close of the evidence and after closing arguments of the parties:

----------

THE COURT: Good afternoon. There were requests for the Court to consider its

---

1. Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2 provides as follows:

    (a) It shall be an unlawful employment practice for an employer—
    (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
    (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

2. While this circumstance is an extraordinary one for this court, this court subscribes to the view that all men and women, being fallible, will make mistakes. A greater mistake is not to appreciate this simple observation. And, a still larger mistake, perhaps an unforgivable one, is to allow pride and ego to cloud judgment and restrain corrective action.

rulings on various pieces of evidence, and the Court adheres to all its earlier rulings on the evidentiary questions. So those exhibits which are marked for identification will remain for identification.

Before the Court is Plaintiff's complaint in which he alleges a cause of action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e–2 as amended for race and sex discrimination. Specifically, the Plaintiff alleges that he was not hired for various positions with the Defendant, and that Defendants' reasons for refusing to hire the Plaintiff were rooted in sex and race discrimination.

Plaintiff is a 36 or 35 year old black male and was 33 years old when he sought four separate positions with the Defendant, the Yazoo County Welfare Department located in Yazoo County, Mississippi. The people hired to fill the positions were two black females and two white females. The Plaintiff alleges that he was well qualified for the positions and as well or more qualified through experience, education, training than the persons hired for the positions.

Tried to the Court sitting without a jury, the Court now issues its bench opinion pursuant to Rule 52, Federal Rules of Civil Procedure.

On July 24, 1987, the Plaintiff applied with the Defendant for a job as child support enforcement officer. The Plaintiff was considered for this position but the Defendant ultimately hired Dorothy McCoy, a black female. The position of child support enforcement officer is established by the Mississippi State Personnel Board. The job requires that the individuals selected help establish paternity and court orders of support. At the time of Plaintiff's application, the minimum requirements for eligibility for the position were a bachelors degree from an accredited college or university or above, a high school diploma, or its G.E.D. equivalent, allowing for the substitution of related experience.

The Plaintiff additionally was considered for three vacancies in the position of eligibility worker. These vacancies were ultimately filled by Janice Reed, Gloria Owens, and

Sammie Stuart. Reed, Owens, and Stuart are respectively a white female, a black female, and a white female. The position of eligibility worker also was established by the Mississippi State Personnel Board. The job requires that the person holding the position establish initial and continuing eligibility for the programs administered by the Welfare Department, including such programs as Public Assistance, A.F.D.C., Food Stamps, and Medicaid. The educational prerequisites for the eligibility worker position are as follows: Successful completion of two years or more of college, 60 or more semester hours in an accredited college or university with no substitutions.

According to testimony, additional skills needed are: one, knowledge of correct English usage and the ability to present ideas clearly and concisely; two, some knowledge of recognized principles, practices, and procedures of public assistance and food assistance; three, ability to learn regulations and policies or assistance programs through experience and in-service training; four, ability to deal tactfully with others, to use good judgment in evaluating situations, and in decision making; and, five, ability to plan and to organize work.

Defendant denies that it has practiced any discrimination in these instances and contends that its hiring decisions were based purely upon the compatible credentials of the applicants. Defendant has offered a number of reasons why the office chose not to hire the Plaintiff. According to Ms. Blain, the director, she was unimpressed with the condition of Plaintiff's application, with the white-outs therein, and with Plaintiff's bearing and appearance during the interview. She stated that during the interview Plaintiff slouched and kept on dark sunglasses.

Ms. Blain further testified that all four hirees acquitted themselves in a manner superior to that of the Plaintiff. According to Ms. Blain, the four hirees expressed themselves better, displayed more enthusiasm, and showed a greater affinity for following instructions and handling detailed applications. Ms. Blain's conclusions, based upon the above, are mostly subjective. So, Ms. Blain has pointed to some objective criteria

in addition. Relative to such a showing, she has sought to contrast the experienced histories of the involved persons, seeking to show that her choice was motivated by non-discriminatory factors.

In the absence of other evidence, this Court might be persuaded by this testimony. However, there's a crucial piece of evidence which undermines this entire structure of proof and convinces this Court to find for the Plaintiff.

Plaintiff testified in a telephone conversation Ms. Blain had offered him a job as child support enforcement officer. Plaintiff testified that he telephoned Ms. Blain upon a message allegedly communicated to his sister from Ms. Blain. Plaintiff stated that in this telephone conversation with Ms. Blain she had offered him the job, which he accepted, and told him when to report to work. Plaintiff's sister, Ms. Hazel B. Davis, corroborated much of Plaintiff's account.

Ms. Blain disagreed with their account. She claims that she but called to advise Plaintiff that he was under consideration. Then, she says, on the very next day she wrote Plaintiff a rejection letter. The Court fails to understand under Ms. Blain's version why she would need to call Plaintiff to offer this encouragement when she had testified that during the interview phase she found him wanting in posture and lacking in neatness and detail.

Confronted with this quandary, as well as with the credible testimony of Plaintiff and his sister, the Court must accept Plaintiff's version of the circumstances of the telephone call. Having accepted this vital piece of Plaintiff's evidence, the Court cannot also accept Ms. Blain's testimony that she initially rejected him as a likely candidate for hire. Rather, this piece of evidence indicates that Ms. Blain was impressed with Plaintiff's credentials and later decided not to hire him upon further reflection.

Now there has been testimony from Ms. Kathy Bowden that she was Plaintiff's eligibility worker, that she formed an adverse opinion whether Plaintiff could perform the job as an eligibility worker, and that upon discovering his application for such that she communicated her opinion on the subject to Ms. Blain. The Court recognizes that the Court's focus here is on the Defendants' state of mind, whether the Defendant was actuated by discriminatory animus, and that as such should the Court discern a motive other than a discriminatory one, that such motive could serve to insulate the Defendant from liability.

In *Wright v. Western Electric Company, Inc.*, found at 664 F.2d 959, 964 (5th Cir. 1981), the Court addressed this particular point and stated there:

> This evidence was clearly sufficient as a matter of law to rebut the presumption of discrimination raised by Plaintiff's prima facie case. Even if Western Electric (here the Defendant) was incorrect in their assessment of Mr. Wright's capabilities, if the company acted on this belief in making their decision not to hire Mr. Wright. And not on the basis of an impermissible factor such as race, there would be no racial discrimination.

Ms. Bowden's testimony could have been viewed under this jurisprudence, that is, whether her opinion influenced Ms. Blain not to hire the Plaintiff. But, the Court is unable to bestow this impact to Ms. Bowden's testimony. Ms. Bowden testified that she shared her opinion with Ms. Blain at Plaintiff's first interview which would have been in August of 1987. This date would have been before Ms. Blain made the September telephone call to Plaintiff. Hence, the Court discounts any impact such unsolicited advice might have had on Ms. Blain's decision not to employ the Plaintiff.

The Defendant also showed that few men had ever worked at the Yazoo County Welfare Department, and that for most of the last five years only one male had been continuously employed there in the work force between 24 and 34 persons. This male, a supervisor, is not in the clerical pool as would have been Plaintiff, had Plaintiff been hired in any one of the slots that he sought.

Under Title VII, a failure to hire an individual because of that person's race, color, religion, sex, or national origin is forbidden. The statute also makes it unlawful for an employer to limit, segregate, or classify its employees in any way which would deprive

or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee. Discrimination need not be the sole reason for an adverse employment decision. No more is required to be shown than that discrimination was a "but for" cause. *McDonald v. Santa Fe Trail Transportation Company,* 427 U.S. 273, 282 Note 10, 96 S.Ct. 2574, 2580 Note 10, 49 L.Ed.2d 493 (1976); *Walsdorf v. Board of Commissioners for the East Jefferson Levee District,* 857 F.2d 1047, 1052 (5th Cir.1988). The Court in *Walsdorf v. Board of Commissioners for the Eastern Jefferson Levee District,* 857 F.2d at 1052, further stated:

> Many factors can, and often do, influence the actions of employers. An employment decision can be motivated by legitimate, illegitimate, and illegal considerations all at the same time. An employer's action does not violate Title VII simply because a discriminatory motive plays some part in an employment decision. In this circuit, the forbidden motive must be a "significant factor."

So to make out a prima facie case of sex discrimination or race discrimination, the Plaintiff must establish four things: one, that he belongs to a group protected by Title VII; two, that he applied for and was qualified for a job for which applicants were being sought; three, that he was rejected; and, four, that after he was rejected the employer continued to seek applicants with similar qualifications. *Walker v. Jim Dandy Company,* 638 F.2d 1330, 1333 (5th Cir.1981); and also see *McDonnell Douglas Corporation v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

It is clear that the Plaintiff, a black male, is a member of a protected class. The Plaintiff not only applied for one position for which he was qualified but applied for four positions for which he was qualified and for which applicants were being sought. It is further clear that the Plaintiff was qualified for each of the positions and, as a matter of fact, was more qualified than one or two of the women hired. At the time the Plaintiff applied for a position with the Yazoo County Welfare Department, he held a B.S. Degree in Criminal Justice with approximately 30 hours in sociology and also held a paralegal certificate.

Moreover, his past employment history included extensive work as a youth counselor. The Plaintiff was rejected for all of the positions for which he applied. After being rejected, the positions were filled by female members who had similar qualifications and, as stated, in some instances somewhat less qualifications than that of the Plaintiff.

It is clear that in September, 1987, the Plaintiff was in fact offered a position as a child support enforcement officer and was advised that he would start work in that position on October 1, 1987. The Plaintiff then received a letter rejecting him for this position. Later the Defendant filled this position with a female applicant. So it is evident that Plaintiff established a prima facie case of discrimination which created a presumption that the Defendant had discriminated against the Plaintiff on the basis of his sex. *Walsdorf v. Board of Commissioners for the East Jefferson Levee District,* 857 F.2d at 1051.

Once the Plaintiff has established a prima facie case under the standards set forth in *McDonnell Douglas,* supra, the burden shifts to the Defendant to articulate some legitimate nondiscriminatory reason for having rejected the Plaintiff. In this matter, the Defendant had the production burden of articulating some reason other than a preference for females over males which might have justified its employment decision. If the Defendant meets this burden, the Plaintiff must then show that the articulated reason was a mere pretext for discrimination.

The Defendant through the testimony of Ms. Blain searched in vain to offer a legitimate nondiscriminatory reason for having failed to hire the Plaintiff for any of the four positions for which he applied. It became evident to the Court that Ms. Blain's rationale for not hiring the Plaintiff was no more than a pretext for discrimination.

In the pretrial order, the Defendant stated that it intended to show that Plaintiff had falsified information on his application form. Apparently, Defendant hoped to show that

Plaintiff's work history at the Mississippi Department of Corrections from which Plaintiff was fired and later reinstated was inaccurate. Defendants' proof on this point fell far short of the mark. Defendant neither showed that the work history was false, in view of Plaintiff's testimony that after a lawsuit he was reinstated to all benefits and lost time, nor did Defendant show that it had relied on any such view of Plaintiff's application in rejecting him.

Defendant also sought to make much of the various omissions in Plaintiff's application. For instance, Ms. Blain stated that Plaintiff neglected to include his college grade point average. Yet, some of the other applicants were guilty of the same omission, a point glossed over by Ms. Blain.

Hence, the Court finds that sex played a motivating factor in Ms. Blain's decision and in the Defendants' decision not to hire the Plaintiff. Accordingly, the Court finds for the Plaintiff and against the Defendant. The Court further finds that the Plaintiff has not been employed by the Defendant and thus it is necessary for the Court to order the Defendant to place the Plaintiff in any available position. The Court further finds that the Plaintiff is entitled to back pay, unpaid fringe benefits, and other costs and expenses including attorney fees due the Plaintiff as a result of the unlawful acts of the Defendant.

So ordered, this day, the 28th day of February, 1990.

----------

## II. QUESTIONS POSED BY THE FIFTH CIRCUIT

The Fifth Circuit specifically questions this court's decision to credit the testimony of Clifton Davis and his sister over the contradictory testimony of Thalia Blain with regard to two telephone conversations. The Fifth Circuit states:

> The crucial piece of evidence referred to by the district court concerned two telephone conversations—one between Blain and Davis' sister; the other between Blain and Davis. Davis' sister testified that on September 8, Blain called, asked for Davis who was not at home, and left a message "that he ha[d] the child support job" and

should "come by or call [Ms. Blain] as soon as possible." Davis testified that upon receipt of this message, he called Blain. She was not in, so he called again on the morning of September 9. According to his testimony, when he reached Blain on September 9, she stated: "oh, yeah, Clifton, we looked at your application, we seen that you already gone by the school and got your paralegal certificate and we want you to know that we have already considered you for the position of child enforcement officer and you got the job, come in on the ... first of October."

> According to Blain's testimony, she called Davis in order to find out whether he desired a separate interview for the child support enforcement position. As she explained: "I had interviewed him—I called him to tell him that I had received his child support enforcement officer position [application], and the purpose of my talking with him was to see whether or not he wanted to come back for another interview or whether or not the first interview would stand." She stated that in her conversation with him on September 10, she told him "that he would be given consideration without having to have another face-to-face interview." On September 11, Blain sent a rejection letter to Davis. As she stated, she thought that she had made a fair assessment of the situation, because she "gave [Davis' application] serious thought between the two time periods involved."

*Davis*, 942 F.2d at 886.

According to the Fifth Circuit's opinion, this court made a credibility determination based upon an erroneous perception that a logical inconsistency existed in Blain's testimony, The Court stated further that:

> ... in describing the "crucial piece of evidence" on which it relied, the district court referred to a logical inconsistency between Blain's account of her own words in the September 10 telephone conversation and her subsequent actions. As the court stated:

>> [Ms. Blain] claims that she but called to advise Plaintiff that he was under consideration. Then, she says, on the very

next day she wrote Plaintiff a rejection letter. The Court fails to understand under Ms. Blain's version why she would need to call Plaintiff to offer this encouragement when she had testified that during the interview phase she found him wanting in posture and lacking in neatness and detail.

The court infers from this perceived inconsistency that the purpose for the phone call must have been to offer Davis the position, and that her initial impressions of him at the interview must have been—contrary to her testimony—rather favorable. Thus, the court concludes that Blain must have been "impressed with Plaintiff's credentials and later decided not to hire him upon further reflection," implying that illegitimate considerations caused Blain to change her mind.

*Davis,* 942 F.2d at 887.

The Fifth Circuit concluded that this court had clearly erred by failing to acknowledge or account for Blain's testimony that the purpose of her call to Clifton Davis was to determine whether he wanted to go through another interview. The Court concluded its assessment of this court's findings with the following observation:

We agree that if Blain had indicated in testimony that the essential purpose of her call was to advise Davis that he was still under consideration, as the district court suggests, and we, like the district court, accepted that testimony arguendo, this would raise doubts as to the credibility of her earlier assertions that she was unimpressed by his interview. In other words, it would be questionable that Blain would call Davis merely to "offer ... encouragement," when she knew that among the many factors that she would consider in making her final evaluation was a relatively unfavorable interview. In that case, we would certainly defer to the credibility determination of the district court.

We recognize that the district court is in a unique position to assess credibility. In making our decision, however, we have access to the transcript, which the district court generally does not have in making its decision. After a careful review of the transcript, we do not agree that a logical inconsistency exists between what Blain actually testified to—that she called regarding the issue of a second interview— and her unfavorable impression as to certain aspects of Davis' candidacy. In stating that "she but called to advise Plaintiff that he was under consideration" and "to offer this encouragement," the district court appears in our view to have either overlooked or misapprehended a critical part of Blain's testimony. Although Blain indeed testified that she told Davis that he was under consideration, the reason for her call, as she also stated, was to find out whether he wanted another interview. We find nothing illogical or inconsistent about a prospective employer calling a job candidate (about whom the employer has some reservations) regarding the possibility of a second interview when that candidate is entitled as a matter of procedure to such interview.

*Davis,* 942 F.2d at 885–86.

The Fifth Circuit raises other evidentiary concerns in support of its view of this case including the statistical comparison between the number of males applying for work with the Yazoo County Welfare Department and the number actually hired; the poor condition of Clifton Davis' application; his comportment during his interview with Ms. Blain; and the apparently superior qualifications of the persons who were hired for the positions in question.

Therefore, pursuant to the Fifth Circuit's directive, this court has reviewed its decision in light of the transcript of testimony. Additionally, this court conducted a status conference wherein counsel for the respective parties presented their arguments of fact and law in response to the Fifth Circuit's opinion.

### III. *THE FRESH LOOK*

Having taken a fresh look at the evidence in light of the Fifth Circuit's observations, this court now recognizes that it erred. While the court adheres to its previous factual findings, the court cannot abide by its earlier-reached conclusion that these findings lead to a conclusion of sex discrimination.

This court still holds that plaintiff was qualified for the position. This court is still convinced that plaintiff could have performed the job chores demanded. He had the requisite education, and more. During the trial, the defendant questioned plaintiff's communication skills. A reader of the record transcript might be inclined to entertain similar doubts. The trial transcript is in many respects unkind to plaintiff's mastery of grammar. Upon reading the trial transcript, this court was surprised at the different impression conveyed by plaintiff's transcript words vice his in-court testimony. Perhaps this difference is explained by the fact that plaintiff speaks with a slight lisp. Or perhaps by the animation, emotion and speed of his verbal outpourings. Regardless, this court is yet convinced that plaintiff's education and communicative skills met the minimum requirements for the jobs in issue.

This court is also still convinced that Blain telephoned plaintiff on September 10, 1987, and offered him the position of Child Support Enforcement Officer. Blain testified that she called merely to ask plaintiff whether he wanted a second interview. This court was thoroughly unimpressed with this explanation, and still is. While the Fifth Circuit seems to give this explanation some weight, this court does not. Blain testified at trial that plaintiff's first interview had been most distressing, that he had slouched in his seat, worn dark non-prescription eyeglasses the entire time and had turned in an application that was neither neat nor correctly completed. To this court's eye, Blain appeared to be a no-nonsense administrator who would disdain the repeat performance of futile, frustrating acts. Having allowed him an earlier non-productive interview, she had no reason to call his home in diligent search of him for a second frustrating and disrespectful interview. This court did not see Blain as someone who having suffered an unpleasant interview would rush to give the applicant a second chance.

On the other hand, plaintiff's testimony, notwithstanding the minor contradiction with his sister's testimony relative to the first time Blain called, had the ring of truth. As the Fifth Circuit correctly observed in its detailed opinion, the district court is in the better position to weigh credibility. Rule 52(a), Federal Rules of Civil Procedure; *Anderson v. City of Bessemer City,* 470 U.S. 564, 572–74, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). The Fifth Circuit had before it only the words of plaintiff. This court had both. Sometimes it happens that dry, lifeless words on silent parchment fail to convey the emotionalism and excitement of the utterance from which credibility may be gleaned. Plaintiff's testimony on the Blain telephone call had these qualities of believability. The court vividly recalls plaintiff's uncontained excited testimony on the matter, detailing his tremendous thrill at the job offer, and how with unabashed joy he revealed the good news to every family member and friend he could contact. And, further, this court was persuaded by plaintiff's demeanor and could feel his pain as he sadly and pitifully described his hurt at receiving the rejection slip from defendant the next day.

This court carefully weighed and compared the in-court testimony of Blain and the plaintiff. Earlier, this court found for plaintiff on this point, and this court still does. This court then adheres to its earlier finding that, as plaintiff testified, Blain telephoned him on September 10, 1987, and offered him the position of Child Support Enforcement Officer.

But, now comes the problem with the court's earlier conclusion that all of this signaled sex discrimination. In its earlier bench opinion, this court essentially concluded that since Blain lied about the September 10, 1987, telephone call to plaintiff, that her decision later to withdraw the job offer to plaintiff was rooted in sex discrimination. Earlier, this court simply disbelieved Blain's testimony and determined that her motive for misrepresentation had to be an effort to mask her discriminatory conduct. While this reaction could be true, this logical leap without the benefit of more evidence has problems.

This court is convinced that Blain did indeed telephone and offer plaintiff a job position. But, Blain's withdrawal of the offer does not necessarily point to sex discrimination. First of all, if Blain had a mind to

discriminate against plaintiff on account of his male sex, one wonders why she would call and offer him the position on September 10, 1987. In other words, if Blain had a prejudice against hiring male workers and did not want to employ him for that reason, why would she have called him and offered him a position as this court has found that she did, when she theoretically could have rejected him simply on the interview and condition of the application form?

Next, Blain's change of heart about plaintiff's fitness for the job position does not necessarily point to discrimination. *Lamphere v. Brown University,* 875 F.2d 916, 923 (1st Cir.1989). Again, this court is proceeding on its conclusion that Blain telephoned and offered plaintiff the position. This court is convinced that Blain, for some reason, changed her mind. But, this court cannot say that this subsequent mind change was activated or attended by a discriminatory intent. Kathy Bowden, an Eligibility Worker with the Yazoo County Welfare Department who previously had taken plaintiff's application for welfare benefits, testified that she had approached and advised Blain that she had doubted plaintiff had the requisite communicative skills for the position. Blain testified that she found plaintiff's application and interview unsatisfactory. Blain had a number of other qualified candidates to consider. Perhaps Blain merely rethought her decision to hire plaintiff and upon reflecting upon any or all of these factors simply decided to reject her earlier decision. What is clear, however, is that this court cannot connect Blain's telephone offer of a job to plaintiff on September 10, 1987, and that of the subsequent, next-day rejection by any bridge of discrimination.

This court obviously has no lens which peer into the human mind to discern how and why decisions are made. Instead, the court must rely upon objective evidence which purports to reveal these matters. Here, plaintiff had the proof burden to show that Blain's decision not to hire him was motivated by discriminatory concerns. *St. Mary's Honor Center v. Hicks,* —— U.S. ——, ——, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993); *Montgomery v. Brookshire,* 34 F.3d 291 (5th Cir.1994). The plaintiff has convinced this court that his qualifications for the position were equal to or better than his competitors. The plaintiff has persuaded the court that Blain initially offered him the position. But, plaintiff has not shown that Blain's decision to withdraw the offer was tainted by unlawful discriminatory motives. And, under the evidence, this court simply cannot find support in the record for such a conclusion.

As earlier mentioned, this court initially found for plaintiff in its earlier bench opinion. Having studied the trial transcript and having re-examined the basis for its earlier decision, this court finds that it must reverse itself. While this court is yet convinced that all the pieces of this puzzle have not been assembled, still those portions thus far presented do not show a picture of sex discrimination clear enough to satisfy plaintiff's proof burden. This court's verdict is for the defendant.

**SO ORDERED AND ADJUDGED.**