**Don KEMP, Plaintiff,**

**v.**

**Geoffrey MONGE, in his official capacity as Sheriff of Sarasota County, Florida, and Sarasota County, Florida,[1] Defendants.**

No. 93–2205–CIV–T–23C.

United States District Court,
M.D. Florida,
Tampa Division.

Feb. 9, 1996.

Adrienne Fechter, Thomas W. Dickson, Fechter & Dickson, P.A., Tampa, FL, for Don Kemp.

---

1. The parties have consented to proceed before the Magistrate Judge pursuant to Title 28, United States Code, Section 636(c) and Fed.R.Civ.P. 73.

Richard Edward Nelson, Frederick Joseph Elbru, Widman, Herb, Causey & Dooley, Sarasota, FL, William M. Rossi, Sarasota County Attorney's Office, Sarasota, FL, for Geoffrey Monge, in his official capacity as Sheriff of Sarasota County, Florida, Sarasota County, Florida.

### ORDER

JENKINS, United States Magistrate Judge.

THIS CAUSE comes on for consideration for a post-verdict determination of plaintiff Don Kemp's salary upon reinstatement as Detective with the Criminal Investigations Bureau of the Sarasota County Sheriff's Office and for a determination of whether plaintiff should be reinstated to the rank of Deputy First Class or Corporal. An evidentiary hearing was held on January 25, 1996.

### I. Background Facts

Plaintiff brought this action for violations of the Americans with Disability Act, 42 U.S.C. § 12111 et. seq., the Rehabilitation Act of 1973, 29 U.S.C. § 701 et. seq., the Florida Civil Rights Act of 1992, Fla.Stat. § 760.10, and 42 U.S.C. § 1983 for failure to accommodate his hearing impairment.

On December 18, 1995 the jury returned a verdict for plaintiff on all counts and awarded back pay and compensatory damages. Judgment was entered in the favor of plaintiff in the amount of $295,000 with interest and costs. At that time, this court reserved jurisdiction to consider the issue of reinstatement or, in the alternative, front pay.[2]

Plaintiff has been employed by the defendant Sarasota County Sheriff's Office since 1987. On September 30, 1987 he was promoted to Deputy First Class. On February 14, 1990 plaintiff was transferred to the Special Investigations Bureau (SIB) as an investigator. On May 1, 1990, after having his hearing tested, plaintiff was fitted with binaural hearing aids.

Plaintiff had his hearing tested on numerous occasions from May 1, 1990 through December 17, 1991. On January 3, 1992, Captain Eggleston and Captain Kendall recommended plaintiff be transferred from the SIB to the Patrol Bureau based on their perception that plaintiff's hearing disability was a safety hazard. On January 13, 1992 plaintiff was reassigned to the front desk of the Sheriff's Office and was reclassified as Deputy Second Class.

### II. Discussion

The parties have stipulated that plaintiff shall be reinstated as a Detective for the Criminal Investigations Bureau ("CIB") in the South County office of the Sarasota County Sheriff's Office under the supervision of Sergeant Mike Lowen. They agree that defendant may limit plaintiff's duties as a Detective in order to reasonably accommodate his disability. They have further stipulated that plaintiff shall receive specialty pay in the amount of $1,200 a year as well as a take-home vehicle, and that, for purposes of seniority, plaintiff shall be considered as if he was never demoted to the rank of Deputy Second Class on January 13, 1992. Additionally, they agree that plaintiff's job evaluations from January 1992 through 1995 shall be given no effect. Finally, they stipulate to having a provision in the order regarding future retaliation against plaintiff or any employees who testified in support of him at trial. (Dkt.104)

The issues remaining for determination are plaintiff's salary and the rank to which plaintiff shall be reinstated. Plaintiff argues that upon reinstatement as an a detective his salary should be $41,034.83 but defendant contends his salary should be $33,656.00. Plaintiff also argues that he should be reinstated to the rank of Corporal rather than Deputy First Class. Defendant disagrees that plaintiff should be reinstated as a Corporal but agrees to afford him the next available opportunity to take the Corporal's examination.

#### a. Equitable Remedies

■ The Rehabilitation Act provides that the remedies set forth in section 706(g) of Title VII of the Civil Rights Act of 1964,

2. The parties agree that reinstatement rather than front pay is an appropriate remedy.

U.S.C. § 2000e–5(g), are available to those persons bringing claims pursuant to the Rehabilitation Act. 29 U.S.C. § 794a(a)(1). Section 706(g)(1) provides:

> "[i]f the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay ..., or any other equitable relief as the court deems appropriate."

42 U.S.C. § 2000e–5(g). As such, prevailing Rehabilitation Act plaintiffs are entitled to the same remedies as prevailing Title VII plaintiffs. *Lengen v. Dept. of Transportation,* 903 F.2d 1464, 1468 (11th Cir.1990). The court has broad discretion in determining whether to grant equitable relief as well as the type of equitable relief to grant. *Id.* (citation omitted). However, the court is limited to the extent that "the equitable claim [must be] resolved subsequently in light of the jury's determination of the legal claim." *In re Lewis,* 845 F.2d 624, 629 (6th Cir.1988).

In the majority of the decisions regarding equitable remedies, the court determines whether the aggrieved plaintiff should be reinstated or, in the alternative, awarded front pay. Here, however, the parties have already agreed to plaintiff's reinstatement. This court instead is faced with the novel issue of plaintiff's salary upon reinstatement and the rank to which he is to be reinstated.

b. Salary

In support of plaintiff's contention that his salary for 1996 should be $41,034.83, plaintiff relies upon the testimony of Joyce Eastridge. Ms. Eastridge, plaintiff's economist, testified at trial as well as at the January 25, 1996 hearing. At both the trial and the hearing, Ms. Eastridge testified that in determining plaintiff's projected salary, she calculated

plaintiff's growth rate to be nine percent per annum. She further testified that at the time of trial she calculated plaintiff's lost back pay to be a total of $43,887.00 with prejudgment interest of $5143.35, for a total of $49,030.00 in back pay damages.

Based upon the nine percent growth rate, Ms. Eastridge calculated plaintiff's salary for 1995 had he continued as a Deputy First Class to be $39,834.83. (Plaintiff's Exh. A) Using this 1995 salary and the nine percent growth rate, she calculated plaintiff's salary for 1996, including a specialty pay of $1,200 a year, to be $41,034.83. (Plaintiff's Exh. B)

Ms. Eastridge also testified that she was given the personnel action sheets for eleven individuals who were promoted to Corporal since the October 1992 Corporal's examination. She utilized these sheets to calculate each individual's time employed prior to the promotion as well as his salary received upon promotion, his gross income, and total compensation for 1995. (Plaintiff's Exh. B)

Ms. Eastridge admitted that she did not know the average growth rate for defendant's employees. She also admitted that the $41,034.83 salary requested by plaintiff is higher than the average salary for first class deputies. However, she stated that the requested salary is within the salary range of corporals.

Defendant contends that the growth rate used by Ms. Eastridge is excessive. It argues that according to Sarasota County Sheriff's Department memoranda from Sheriff Monge to all personnel, the average growth rate is much lower. Specifically, these memoranda show that on October 3, 1991 the projected average wage increase for the Sarasota County Sheriff's Department was 4.54%. The projected average wage increase was 4.5% on September 39, 1992, September 29, 1993, September 30, 1994, and October 1, 1995. (Defendant's Exh. 54) Defendant argues that if a lower growth rate were applied, plaintiff's salary would be considerably less than the salary requested.[3]

---

**3.** These memoranda regarding average yearly pay increases for defendant's employees were not introduced into evidence at trial.

Richard Goble, a certified public accountant called by defendant at the hearing, testified that, applying an average growth rate of four and a half percent to plaintiff's salary, yields a 1995 base salary of $33,656.00. He also testified that he was not requested to nor did he determine plaintiff's back pay loss. However, he agreed that if plaintiff's back pay were calculated using a four and a half percent growth rate it would equal approximately $9,500.

█ Plaintiff argues that the jury implicitly adopted Ms. Eastridge's calculations with a nine percent growth rate, and, as such, the court is prohibited from reconsidering the issue by collateral estoppel. He further argues that Mr. Goble's testimony regarding plaintiff's projected 1995 salary of $33,000 is completely inconsistent with the jury's verdict and the award of back pay in the amount of $45,000.

The parties have not cited any cases, nor has this court's own research led to any authority regarding a court's post-trial determination of a plaintiff's salary upon reinstatement after a jury determination of plaintiff's back pay. However, plaintiff cites the cases of *Ohio–Sealy Mattress Mfg. Co. v. Sealy, Inc.*, 585 F.2d 821 (7th Cir.1978), *cert. denied*, 440 U.S. 930, 99 S.Ct. 1267, 59 L.Ed.2d 486 (1979), and *Lindsey v. American Cast Iron Pipe Co.*, 810 F.2d 1094 (11th Cir.1987) in support of his position. In *Ohio–Sealy Mattress Mfg. Co.*, the court stated that where a plaintiff seeks both legal and equitable relief, "[a]ny actual issues necessarily and actually decided by the jury are foreclosed under settled principles of collateral estoppel from subsequent reconsideration by the district court." *Ohio–Sealy Mattress Mfg. Co.*, 585 F.2d at 844. It further stated that "[t]he court may not make findings contrary to or inconsistent with the jury's resolution ... of that same issue as implicitly reflected in its general verdict ... on the damages claim." *Id.* (citation omitted).

The Eleventh Circuit in *Lindsey*, found that the district court should not have denied the plaintiff liquidated damages under the

Age Discrimination Employment Act, 29 U.S.C. § 626(b), as its finding conflicted with the jury's finding that defendant intentionally discriminated against plaintiff because of his age. Once a jury has implicitly or explicitly decided an issue, the trial court cannot reconsider it. 810 F.2d at 1098.

Here, the jury implicitly adopted Ms. Eastridge's testimony regarding plaintiff's nine percent annual growth rate and awarded plaintiff $45,000 in back pay.[4] Ms. Eastridge testified at trial that she calculated plaintiff's annual growth rate to be nine percent by calculating his average growth rate over the 4.6 years plaintiff had been employed by defendant. She indicated that in plaintiff's first year as a deputy he received a very large increase which contributed to the high growth rate.

Rather than present its own economist and evidence at trial regarding the issues of plaintiff's growth rate and back pay, defendant chose to rely solely upon its cross-examination of Ms. Eastridge. Defendant asked Ms. Eastridge whether she knew the average growth rate for the Sheriff's Office to which Ms. Eastridge responded that she did not. Defendant also asked if plaintiff's back pay would be different if a lower growth rate of four percent were used. Ms. Eastridge answered that the figures would be lower.

Defendant's attempt at introducing evidence relating to plaintiff's growth rate at the hearing comes too late. The jury has already implicitly determined plaintiff's growth rate in awarding plaintiff back pay. Accordingly, the court may not reconsider the issue or make any finding which conflicts with the jury's finding. If this court in determining plaintiff's salary adopted the four and a half percent growth rate advocated by defendant such finding would be in implicit conflict with the jury's back pay award. As such, the court finds that upon reinstatement plaintiff's starting salary for 1996 shall be $41,034.83 as calculated by Joyce Eastridge.

---

**4.** While Ms. Eastridge testified at trial that plaintiff's back pay was equivalent to $49,030.00, plaintiff asked the jury to consider the fact that plaintiff does not have to pay taxes on any award, and therefore only requested an award of $45,000 in back pay.

While mindful of the implications of such a holding, this court agrees with plaintiff that his salary upon reinstatement was implicitly determined by the jury in its back pay award, given the evidence introduced at trial. This issue is not easily resolved, however, and guidance from other courts on the relationship between back pay awards and reinstatement will be most welcome. As of this date, there are apparently no reported decisions addressing the collateral estoppel implications of a back pay award in this context.

c. Plaintiff's Rank

■ Plaintiff also contends that he should be reinstated as an investigator with the rank of Corporal. He argues that because of his January 1992 reclassification to Second Class Deputy, he was not allowed to take the Corporal's examination and thus missed four opportunities to the examination. Plaintiff also argues that defendant cannot prove that he would not have been promoted to Corporal since January 13, 1992.

Defendant argues that there is no way of knowing whether plaintiff would have been promoted at any time from September 1992 to date had he remained a Deputy First Class. It further argues that while many first class deputies become eligible to be considered for a promotion to Corporal, very few actually are promoted each year. It contends that plaintiff should be reinstated as a Deputy First Class and be allowed to take the next Corporal's examination in September 1996.

In order to be eligible for a promotion to Corporal plaintiff must: 1) have eighteen months as a Deputy First Class and an associates degree; 2) take a written examination; and 3) be evaluated be his supervisor. The top fifteen candidates then go before a five member board for an oral interview at which time they are asked a series of questions. After the interviews, the top ten candidates are interviewed by the Sheriff. The final ranking is computed by the total scores obtained on the examination, evaluation, oral interview, and Sheriff's interview giving equal weight to each of the four areas of performance. As a position becomes available, the individual at the top of the list is promoted to the rank of Corporal. (Defendant's Exhibit 53)

Major Ed Palmer testified regarding the procedure by which deputies are promoted. He explained that the Corporal's examination is offered every September. He further explained that the ranking of the candidates is determined by factors such as number of college hours, years of service, merit evaluations, and the answers the applicants give to oral questions.

Major Palmer also explained that while many deputies are qualified to take the examination each year, very few are promoted. For example, in 1992–1993 twenty seven persons applied to take the Corporal's examination but only three of the deputies were promoted to the rank of Corporal. Additionally, in September 1993 thirty-eight persons applied yet only three were promoted. In September 1994 twenty-nine applicants applied to take the examination but only four were promoted. Finally, in September 1995 twenty-three applicants took the test but no one has been appointed to the rank of Corporal thus far.

The parties stipulated that as of January 13, 1992 plaintiff met the qualifications for taking the Corporal's examination with the exception of his rank on that date. Plaintiff argues that he should be reclassified as a Corporal if defendant cannot prove that plaintiff would not have been promoted at any time from January 1992 to date.

In support of his argument, plaintiff relies on the cases of *Dougherty v. Barry*, 869 F.2d 605, 614 (D.C.Cir.1989) (once plaintiffs showed they had been subjected to disparate treatment, the burden shifted to the defendant to show that each plaintiff was not entitled to relief because he or she would not have received a promotion absent the discrimination), *Bibbs v. Block*, 778 F.2d 1318, 1324 (8th Cir.1985) (defendant could avoid an award of reinstatement if it could prove that plaintiff would not have been hired or promoted even in absence of the discrimination), and *Harrison v. Dole*, 643 F.Supp. 794, 796 (D.D.C.1986) (while there was uncertainty as what the progress of plaintiff would have been, it was equitable to resolve the uncer-

tainty against the party who gave rise to the problem).

However, these cases are distinguishable. First, in both *Dougherty* and *Bibbs* the actual failure to promote was the adverse action complained of by the plaintiffs. *See Dougherty,* 869 F.2d at 606; *Bibbs,* 778 F.2d at 1319. Here, plaintiff brought this action because he was demoted from Deputy First Class to Deputy Second Class. He did not allege that he was denied a promotion due to his disability.

Moreover, in *Bibbs* the court stated that "[i]t does not follow, though, that retroactive promotion is an appropriate remedy. Unless the impermissible racial motivation was a but-for cause of Bibb's losing the promotion, to place him in the job now would award him a windfall. He would be more than made whole." *Id.* at 1322. Here, plaintiff has not shown that defendant's discrimination based upon plaintiff's hearing loss was a but-for cause of plaintiff's failure to be promoted to Corporal. While plaintiff's inability to apply for the Corporal's test stemmed from his demotion to a Deputy Second Class, there is no showing that he was not promoted solely because of discrimination.

Finally, in *Harrison* there was actual evidence of one plaintiff's promotional progression at a similar job which the court found persuasive. *Harrison,* 643 F.Supp. at 796. In this case plaintiff has remained an employee of defendant. As such, there is no evidence of his progression in a similar position to show that he would have, in fact, received a promotion.

This court's own research has led to the case of *Wittmer v. Peters,* 904 F.Supp. 845, 855 (D.Ill.1995), in which the plaintiffs requested promotions to the next available lieutenant positions in the Illinois Department of Corrections boot camp program as a remedy for defendant's racial discrimination. The court found that the requested relief was "far too speculative in nature to be awarded" and denied the request. *Id.* at 856. It explained that there was no evidence that any of the plaintiffs would have been promoted to the position and that whether any of the plaintiffs would have received a promotion "is unknown and amounts to nothing more than speculation." *Id.*

Similarly, the requested relief here is too speculative. While it is true that plaintiff was unable to take the Corporal's examination from September 1992 through September 1995, there is no competent evidence to conclude that plaintiff would have done well on the examination and advanced to the oral interviews. The evidence and testimony presented establishes that 117 persons took the Corporal's examination from September 1992 through September 1995. To date only eleven of those persons have been promoted to Corporal. To hold that plaintiff would have been among those eleven persons is guesswork at best.

Plaintiff tries to persuade the court by comparing the number of months he has been employed with defendant to that of the eleven deputies who received promotions. He argues that he has been employed longer than the average deputy who has received a promotion. Plaintiff also argues that another deputy whose hiring date is similar to his was promoted three years ago on January 21, 1993. (Plaintiff's Exh. B)

However, as this court has already indicated, the evidence establishes that the promotion to the rank of Corporal is not a promotion based solely upon the number of years employed. Many different factors are considered, the first being a written examination. Moreover, it has been established that very few persons actually receive the promotion.

This court declines to order defendant to reinstate plaintiff to the rank of Corporal. Plaintiff has not yet had the opportunity to take the examination. To allow him a promotion to Corporal without having to take the examination and go through the screening process with the other applicants would, in essence, be giving plaintiff a windfall.[5]

---

5. Defendant has agreed that plaintiff may take the Corporal's examination and complete the screening process along with the other applicants in September 1996, the next scheduled time for examination.

Accordingly, plaintiff shall be reinstated to Deputy First Class, the position he occupied prior to the demotion to Deputy Second Class which the jury found to be the result of unlawful discrimination.

It is, upon consideration, ORDERED that:

1) Within ten (10) days of the date of this order, plaintiff shall be reinstated to the rank of Deputy First Class. Additionally, he shall be assigned to the position of Detective with the Criminal Investigations Bureau ("CIB") of the South County office of Sarasota County Sheriff's Department under the direct supervision of Sergeant Mike Lowen.

2) Plaintiff's starting salary upon reinstatement shall be $41,034.83.

3) Plaintiff shall receive "specialty pay" at the same rate as other CIB detectives, commencing January 1, 1996

4) Plaintiff shall be entitled to the use of a Sarasota Sheriff's Office assigned vehicle under the same terms, conditions, and responsibilities as other Sarasota Sheriff's Office Deputies assigned such vehicles.

5) For the purposes of seniority and plaintiff's future promotions, pay raises, assignments, transfers, evaluations, and all other matters, plaintiff's transfer to CIB shall be considered effective January 13, 1995, he shall not be considered to have been demoted to the rank of Deputy Second Class and plaintiff's job evaluations and reviews since January 13, 1992 through 1995 shall be given no effect.

6) It shall not be a violation of this order for defendant to limit plaintiff's job duties as a CIB Detective as a method of reasonably accommodating plaintiff's disability, such as:

a. Excluding plaintiff from participating as a member of an entry team on a dynamic entry search or arrest warrant.

b. Excluding plaintiff from participating in electronic surveillance operations as a radio monitor having the responsibility of responding to emergency requests for officer assistance.

7) Sarasota County, the Sarasota County Sheriff's Office, and all employees of those agencies are hereby prohibited from engaging in any acts of retaliation against plaintiff Don Kemp or any officers of the Sarasota Sheriff's Office who testified at the trial of this case.

DONE AND ORDERED.